1  Todd Pickles (SBN CA 215629)
   Henry A. Stroud (SBN CA 342479)
2  GREENBERG TRAURIG, LLP
   400 Capitol Mall, Suite 2400
3  Sacramento, California 95814
   Telephone: 916.442.1111
4  Facsimile: 916.448.1709
   picklest@gtlaw.com
5  henry.stroud@gtlaw.com

6  Attorneys for Plaintiffs
   E.Y. OROT ASSETS LTD. and OMEGA ECO DIAMONDS LTD.
7

8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10

11
12  E.Y. OROT ASSETS LTD., an Israeli company, and OMEGA ECO DIAMONDS LTD., an Israeli company,
13
14          Plaintiffs,
15  v.
16  DIAMOND FOUNDRY INC., a Delaware corporation,
17          Defendant.

CASE NO. 3:24-cv-03836-TLT

**PLAINTIFFS E.Y. OROT ASSETS LTD. AND OMEGA ECO DIAMONDS LTD.'S OPPOSITION TO DEFENDANT DIAMOND FOUNDRY INC.'S MOTION TO DISMISS**

Hearing:    October 22, 2024
Time:       2:00 p.m.
Courtroom:  9

18
19
20
21
22
23
24
25
26
27
28

**Table of Contents**

Page

I. INTRODUCTION ..................................................................................................................5

II. FACTUAL BACKGROUND ................................................................................................6

III. LEGAL STANDARD ............................................................................................................8

IV. PLAINTIFFS HAVE STATED A VIABLE CLAIM FOR DOMESTICATION UNDER THE RECOGNITION ACT .................................................................................................9

    A. Foundry Bears Burden To Prove Non-Recognition of the Final Israeli Judgment ...............9
    B. There Was No Agreement that The Parties' Dispute Was to Be Determined Otherwise Than Proceeding in Israeli Court ................................................................. 10
    C. The Final Judgment Does Not Present Any Fundamental Fairness Concerns ................... 12
    D. Leave To Amend Should Be Granted……………………………………………………..16

V. CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................9

*Brosnan v. Dry Cleaning Station Inc.*,
   2008 WL 2388392, Case No. C-08-02028 EDL (N.D. Cal., Jun 6, 2008) ..............................13

*Cassouto-Noff & Co. v. Diamond*,
   487 Mass. 833 (2021) .........................................................................................................15

*Charles J. Rounds Co. v. Joint Council of Teamsters No. 42*,
   4 Cal. 3d 888 (1971) ...........................................................................................................13

*Chavez v. United States*,
   683 F.3d 1102 (9th Cir. 2012) .............................................................................................8

*Cotter v. Cotter*,
   185 N.C. App. 511 (2007) ..................................................................................................15

*De Fontbrune v. Wofsy*,
   409 F.Supp. 3d 823 (N.D. Cal. Sep. 12, 2019) ....................................................................9

*Delamater v. Anytime Fitness, Inc.*,
   722 F.Supp 2d 1168 (E.D. Cal. 2010) .................................................................................10

*Gompper v. VISX, Inc.*,
   298 F.3d 893, 898 (9th Cir. 2002) .......................................................................................16

*Hyundai Securities Co., Ltd. v. Lee*,
   215 Cal. App. 4th 682 (2013) ..............................................................................................9

*Israel v. Flick Mortg. Investors, Inc.*,
   23 So. 3d 1196 (2008) .........................................................................................................15

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ...............................................................................................9

*Montebueno Marketing, Inc. v. Del Monte Foods Corporation-USA*,
   2012 WL 986607, Case No. CV 11-4977 MEJ (N.D. Cal., Mar. 22, 2012) ..........................12

*Mulugeta v. Ademachew*,
   407 F.Supp. 3d 569 (E.D. Vir. 2019) ..................................................................................14

*Patterson v. Van Arsdel*,
   883 F.3d 826 (9th Cir. 2018) ...............................................................................................8

*Saeta v. Superior Court*,
   117 Cal. App. 4th 261 (2004) ..............................................................................................10

*Tyco Valves & Control Distribution GmbH v. Tippins, Inc.*,
   2006 WL 2924814, Case No. CIV A 04-1626 (W.D. Penn., Oct. 10, 2006) .........................12

3                          CASE NO. 3:24-cv-03836-TLT
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................................................8, 9

**Statutes**

Cal. Civ. Proc. Code § 1715(c) ..............................................................................................9, 16
Cal. Civ. Proc. Code § 1716 .........................................................................................................9
Cal. Civ. Proc. Code § 1716(a) ....................................................................................................9
Cal. Civ. Proc. Code § 1716(c) ....................................................................................................9
Cal. Civ. Proc. Code § 1716(c)(2) .........................................................................................9, 16
Cal. Civ. Proc. Code § 1716(c)(1)(C) ..................................................................................12, 16
Cal. Civ. Proc. Code § 1716(c)(1)(D) ............................................................................9, 10, 12
Cal. Civ. Proc. Code § 1716(c)(1)(D) .......................................................................................10
Cal. Civ. Proc. Code § 1716(c)(1)(F) .....................................................................9, 10, 12, 16

## I. INTRODUCTION

In its Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Motion"), Defendant Diamond Foundry Inc. ("Foundry") urges the Court to preclude domestication of the subject Israeli court judgment ("Final Judgment") entered against Foundry and for Plaintiffs E.Y. Orot Assets Ltd. ("Orot") and Omega Eco Diamonds Ltd. ("Omega" and with Orot, "Plaintiffs") by ignoring the facts in Plaintiff's Complaint that directly refute Foundry's arguments. Foundry also improperly relies on its own conclusory and unsubstantiated allegations or tries to manipulate the facts it acknowledges from the Complaint to obscure the indisputable fact that the courts in Israel afforded Foundry multiple opportunities to participate in litigation in the Israeli courts—opportunities Foundry chose initially to shun, but of which it eventually availed itself by actively participating in extensive motion practice and an appeal in the Israeli courts using seasoned Israeli counsel. By obfuscating these facts, Foundry is trying to improperly re-litigate matters already decided by a different forum that both had jurisdiction over it *and* afforded it ample due process.

First, Foundry argues that Plaintiffs failed to submit the matter to mediation as required by the parties' Foundry-As-A-Service agreement ("Agreement"). In truth, the Complaint specifically alleges the parties *did* submit the matter to mediation before the Israeli court entered the Final Judgment, and that this mediation *did* in fact occur: "On May 3, 2023, Plaintiffs and Foundry engaged in mediation with respect to the dispute in front of the Hon. Robert Dondero (Ret.) in San Francisco, California. Both sides submitted confidential mediation statements and appeared at the mediation meeting through their appointed counsel. However, the parties were unable to resolve the dispute and the Israeli District Court was thereafter so notified." (Dkt. 1 ("Compl.") ¶ 18.) Thus, contrary to Foundry's statements, Plaintiffs acted in full compliance with the Agreement by submitting to and engaging in mediation. Foundry's failure to acknowledge the allegations—and the fact that the parties incontrovertibly engaged in the mediation— alone defeats its Motion.

Second, and similarly, Foundry misconstrues the facts in the Complaint to concoct a story that Foundry was deprived of due process in the proceedings in Israel. Even a cursory examination of the facts contained in the Complaint defeats Foundry's argument. As alleged, and as is true, Foundry was afforded every opportunity to present its defenses and to resolve this matter through many phases of dispute

resolution: pre-litigation informal negotiations; formal mediation in San Francisco, where Foundry maintains its principal place of business; proceedings in the District Court of Tel Aviv of the State of Israel ("Israeli District Court") where Foundry—after initially ignoring the process served on it and missing deadlines—not only appeared, but retained the services of two of the most highly-ranked Israeli firms, filed multiple motions and appeared at hearings; and, the Israeli Appellate Court, where Foundry unsuccessfully challenged the Israeli District Court's order setting reasonable conditions to vacate the Default Judgment.

In truth, and as alleged in the Complaint, Foundry has been afforded more than sufficient due process in the Israeli action, and in Plaintiffs' repeated attempts at both formal mediation and informal resolution. Foundry has repeatedly and consistently refused those opportunities. The Final Judgment that followed was the result of a fair and impartial process. By this Motion, Foundry ignores or obfuscates these facts and continues to display a complete disregard for the legitimate judicial process that afforded Foundry the opportunity to litigate the merits. The Court should deny Foundry's motion to dismiss.

## II.   FACTUAL BACKGROUND

Orot and Foundry entered into the Agreement on October 14, 2020, by which Foundry was to provide Orot with laboratory-manufactured diamonds that satisfied certain agreed-upon quality criteria. (Compl. ¶ 6.) The Agreement did not have a forum selection clause but did require that the parties mediate any disputes prior to litigation. (*Id.*)

On or about March 27, 2022, Plaintiffs filed a statement of claims, the procedural equivalent to a complaint (the "Israeli Complaint"), in the Israeli District Court, alleging that Foundry breached the Agreement. (*Id.* ¶¶ 7-8.) Plaintiff did so "following lengthy attempts at resolving their differences through friendly discussions, ***requests for mediation***, and eventually through attorney letters." (*Id.* (emphasis added)). Foundry failed to engage with the Plaintiffs on any substantive level and failed to agree to mediation. Facing a stone wall of silence and evasion, on or about May 11, 2022,[1] Plaintiffs served upon Foundry, consistent with the requirement of the Hague Convention and Israeli procedural law, a professionally translated copy of the Israeli Complaint in compliance with the relevant rules and

---

[1] The Complaint contains an error with respect to the date of service of the Israeli Complaint. The Israeli Complaint was served on or about May 11, 2022. This date has no bearing on any of the arguments before the Court in Foundry's Motion. Plaintiffs will correct through seeking leave to file an amended complaint upon conclusion of this Motion and apologize for any inconveniences caused.

requirements of the Israeli District Court for extraterritorial service of process.  (*Id.* ¶ 11.)

On or about August 14, 2022, months after service of the Israeli Complaint and after the date it was due, Plaintiffs moved the Israeli District Court to enter default judgment in favor of Plaintiffs after Foundry failed to answer, object, request an extension of time, or otherwise respond to the Israeli Complaint within the time period specified under applicable Israeli procedural law.  (*Id.* ¶ 12.)  The Israeli District Court entered default judgment for Plaintiffs and against Foundry (the "Israeli Default Judgment") in the amount of 15,287,500.00 New Israeli Shekels ("NIS") plus interest from the date of the judgment.  (*Id.* ¶ 13; Ex. 2.)  On or about September 2, 2022, Plaintiffs served the Default Judgment on Foundry.  (*Id.* ¶ 14.)

On or about September 3, 2022, months after it had been served the complaint, Foundry faxed to the Israeli District Court a letter from Foundry's Head of Finance.  (*Id.* ¶ 15.)  In the letter, Foundry claimed it had attempted to send a response to the Israeli Complaint to the Israeli District Court in June 2022, and requested that the court "deny all claims" on various grounds.  (*Id.*)  Shortly thereafter, Foundry hired Israeli counsel, a well-known law firm among the most highly ranked in Israel, to represent it in the dispute.  (*Id.* ¶ 16.)  On or about October 6, 2022, Foundry, through its Israeli counsel, filed a motion to set aside the Default Judgment.  (*Id.*)

On or about December 8, 2022, the parties jointly requested that the Israeli District Court stay proceedings so that the parties could mediate the dispute through the JAMS mediation institute.  (*Id.* ¶ 17.)  On or about May 3, 2023, the parties engaged in a formal mediation in front of the Hon. Robert Dondero in San Francisco, where Foundry maintains its primary place of business.  (*Id.* ¶ 18.)  All parties submitted confidential mediation statements and appeared at the mediation through their appointed counsel.  (*Id.*)  However, the parties did not resolve the dispute and the stay was lifted.  (*Id.*)  Shortly thereafter, Foundry replaced its legal counsel with another highly reputable Israeli firm.  (*Id.* ¶ 19.)

Following the lifting of the stay, the parties fully briefed Foundry's Motion to Set Aside the Default.  (*Id.* ¶ 23.)  The Court held two hearings on the matter, on January 10 and January 18, 2024.  (*Id.* ¶ 26.)  On January 19, 2024, the Israeli District Court issued its Order on Foundry's Motion to Vacate the Default Judgment (the "Default Judgment Order").  (*Id.* ¶ 28; Ex. 3.)  The Israeli District Court found that Foundry's purported answer (the "Fax") to the Israeli Complaint was insufficient as it did not include a supporting affidavit as required under Israeli law; the FedEx delivery receipt that Foundry alleged showed

purported delivery of an earlier letter to the Israeli District Court did not, in fact, show delivery; Foundry did not otherwise attempt to contact the Court until after the default had been served on it; and the Fax was in many other respects procedurally deficient. (*Id*., Ex. 3 ¶¶ 12-14.) But notwithstanding these deficiencies and its conclusion that the Defendant appeared to have treated the court process with contempt, the Israeli District Court nevertheless held that the Default Judgment would be vacated provided Foundry issued a bond for 3,000,000 NIS for deposit with the court within thirty days. (*Id*., Ex. 3 ¶ 20.)

On or about February 15, 2024, Foundry appealed the Default Judgment Order and the appellate division of the Israeli District Court ("Israeli Appellate Court") temporarily enjoined enforcement of the Default Judgment until the appeal was decided. (*Id.* ¶ 32.) On or about March 12, 2024, the Israeli Appellate Court denied Foundry's appeal pursuant to a lengthy reasoned, written decision, and further extended Foundry's deadline to choose whether to comply with the terms of the Default Judgment Order until March 31, 2024. (*Id.* ¶¶ 34-35.) Foundry ignored this option to restore its ability to litigate the merits of the case and did not issue the required bond. (*Id.* ¶ 36.) Accordingly, on or about April 10, 2024, the Israeli District Court issued the Final Judgment in Plaintiffs' favor. (*Id.* ¶ 37; Ex. 4.) Foundry has not filed any further challenges or appeals of this Final Judgment, and its time to do so expired on or about June 18, 2024. (*Id.* ¶ 40.)

On June 26, 2024, Plaintiffs filed the Complaint seeking domestication of the Final Judgment pursuant to the California Uniform Foreign-Country Money Judgments Recognition Act ("Recognition Act").

### III. LEGAL STANDARD

In ruling on a motion to dismiss, a court must "accept the [plaintiff's] allegations as true and construe them in the light most favorable to plaintiff[]." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009); *see also Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."). The motion should be denied if the complaint "'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' . . . 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Chavez v. United States*, 683 F.3d 1102, 1109-10 (9th Cir. 2012)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal without leave to amend "is improper unless it is clear that the complaint could not be saved by amendment." *Zucco Partners, LLC*, 552 F.3d at 989 (quoting *Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)) (citation omitted).

### IV. PLAINTIFFS HAVE STATED A VIABLE CLAIM FOR DOMESTICATION UNDER THE RECOGNITION ACT

The Court should deny Foundry's Motion to Dismiss because Plaintiffs have stated a viable claim for domestication of the Final Judgment under the Recognition Act.

#### A. Foundry Bears Burden To Prove Non-Recognition of the Final Israeli Judgment

"[A] proceeding under California's 'Uniform Foreign-Country Money Judgment Recognition Act' . . . is an action and subject to the requirements applicable to all actions." *Hyundai Securities Co., Ltd. v. Lee*, 215 Cal. App. 4th 682 (2013).  The party seeking recognition of a foreign judgment has the initial burden of establishing entitlement to recognition under the Recognition Act, while the party resisting recognition has the burden of establishing a specified ground for nonrecognition.  *Id.* at 689; Cal. Civ. Proc. Code §§ 1715(c), 1716.  "A court must recognize the foreign judgment unless the resisting party can carry its burden." *De Fontbrune v. Wofsy*, 409 F.Supp. 3d 823, 831-32 (N.D. Cal. Sep. 12, 2019); Cal. Civ. Proc. Code § 1716(a).  The Recognition Act provides mandatory and permissible reasons for a court to decline domestication of a foreign judgment.  Cal. Civ. Proc. Code § 1716(c).  The court may still recognize a judgment issued under these circumstances if "the party seeking recognition of the judgment demonstrates good reason to recognize the judgment that outweighs the ground for nonrecognition." *Id.* § 1716(c)(2).

Foundry does not argue that Plaintiffs have not met their initial burden of establishing recognition of the Final Israeli Judgment.  Rather, by ignoring or misconstruing the allegations in the Complaint, Foundry asserts that the Court should dismiss Plaintiff's Complaint because, Foundry claims, the Final Judgment cannot be recognized under Section 1716(c)(1)(D), which provides that a foreign judgment shall not be recognized if the proceeding "was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court," and section 1716(c)(1)(F), which provides that a foreign judgment shall not be recognized if the "judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect

to the judgment." Cal. Civ. Proc. Code §§ 1716(c)(1)(D), 1716(c)(1)(F). These arguments fail.

## B. There Was No Agreement that The Parties' Dispute Was to Be Determined Otherwise Than Proceeding in Israeli Court

Foundry begins by arguing that the Court cannot recognize the Final Israeli Judgment under the Recognition Act section 1716(c)(1)(D) because, it claims, the parties did not mediate their dispute pursuant to the terms of the Agreement. This argument fails twice over.

First, section 1716(c)(1)(D), based upon the express terms of that provision, applies where an agreement requires resolution in a different forum or precludes resolution in the forum in which the judgment was obtained. Thus, for example, section 1716(c)(1)(D) could apply where there was a forum selection clause identifying a particular court in which the parties agreed to have the matter resolved, or an arbitration provision requiring that the parties' dispute proceed in that forum. The Agreement contains no forum selection clause, nor arbitration provision, nor any other provision by which the parties agreed that any disputes arising from the agreement would be resolved in a forum other than Israel (or any particular forum at all). Thus, Foundry's entire argument under section 1716(c)(1)(D) fails because that section does not apply here.

Faced with this fact, Foundry instead attempts to rewrite section 1716(c)(1)(D) to have it apply where the parties agree to mediate before resolution through litigation. The language of Section 1716(c)(1)(D) itself does not cover such a situation, because an agreement to mediate is not an agreement to "determine [a dispute] otherwise than by proceedings in that foreign court." *Cf. Delamater v. Anytime Fitness, Inc.*, 722 F.Supp 2d 1168, 1177 (E.D. Cal. 2010) (holding that a provision in a franchise agreement requiring mediation outside of California does not violate the California Franchise Relations Act's prohibition on provisions restricting venue to a forum outside of California because a party does not "assert[] a claim for relief or a demand for a legal remedy" in non-binding mediation); *Saeta v. Superior Court*, 117 Cal. App. 4th 261, 270 (2004) ("In essence, mediation is a process where a neutral third party who has no authoritative decision-making power intervenes in a dispute or negotiation to assist disputing parties in voluntarily reaching their own mutually acceptable agreement.") (citations omitted). Thus, Foundry's arguments about mediation in the context of section 1716(c)(1)(D) are misplaced.

Additionally, Foundry's argument ignores the facts that Plaintiffs attempted to mediate this dispute before filing the Israeli Complaint and that the parties did in fact mediate the dispute before issuance of the Final Israeli Judgment. In the Motion, Foundry contends that the Court should dismiss the Complaint because Plaintiffs failed to mediate the dispute prior to the initial filing of the Israeli Complaint as required by the Agreement. However, Foundry only makes cursory mention of the Complaint's allegation that Plaintiffs made attempts to mediate before filing the Israeli Complaint. More problematic, Foundry neglects altogether to mention that, as the Complaint alleges, the parties ***did in fact*** conduct formal mediation of the dispute, including before the Israeli District Court entered the Final Judgment. (Compl. ¶ 7 ("On or about March 27, 2022, following lengthy attempts at resolving their differences through friendly discussions, **requests for mediation**, and eventually through attorney letters, [Plaintiffs] filed a statement of claims . . . against Foundry in the District Court of Tel Aviv of the State of Israel [].") (emphasis added); *Id.* ¶¶ 17-18 ("On December 8, 2022, Plaintiffs and Foundry filed in the Israeli District Court a joint stipulation for a stay of proceedings before the Israeli District Court so that the parties could pursue mediation through the JAMS mediation institute. On May 3, 2023, Plaintiffs and Foundry engaged in mediation with respect to the dispute in front of the Hon. Robert Dondero (Ret.) in San Francisco, California.").

Here, as alleged in the Complaint and acknowledged in the Motion, Plaintiffs attempted to exhaust their mediation remedy by requesting that Foundry agree to mediation before filing the Israeli Complaint. (Compl. ¶ 7.) And, as alleged in the Complaint but ignored in the Motion, once Foundry appeared in the Israeli action, the parties stipulated and the Israeli court agreed to stay the proceedings so that they could mediate the dispute. (*Id.* ¶¶ 17-18.) Indeed, the issue of mandatory mediation was litigated by the parties and addressed by the Israeli District Court in its Default Judgment Order. (Compl., Ex. 3 ¶ 16 ("[P]laintiffs rightly claim that in Section 4 of their attorney's letter, Appendix 4 to the lawsuit, which responds to the defendant's letter dated July 8, 2021, that is, about half a year before filing the lawsuit, they announce their agreement to resort to mediation as agreed. The defendant did not bother to reply to this letter and in any case did not respond to the offer to go to mediation, so there is no basis for their claim in that regard.").) Accordingly, as the Complaint alleges, Plaintiffs did, in fact, mediate in accordance with the Agreement.

Moreover, the two cases cited by Foundry as supporting the proposition that dismissal is proper due to Plaintiffs' failure to mediate prior to filing the Israeli Complaint are inapposite, as neither case addresses a mediation at all, much less the situation where the plaintiff unsuccessfully attempted to mediate prior to filing the foreign complaint and/or did mediate prior to issuance of the foreign judgment. In *Montebueno Marketing, Inc. v. Del Monte Foods Corporation-USA*, plaintiff sought to enforce a Philippine foreign judgment despite the Northern District of California granting defendant's separate Petition to Compel Arbitration and ordering the parties to arbitrate before the Philippine judgment was entered. 2012 WL 986607, at *1, Case No. CV 11-4977 MEJ (N.D. Cal., Mar. 22, 2012). In *Tyco Valves & Control Distribution GmbH v. Tippins, Inc.*, the court found that a foreign judgment was unenforceable under the Pennsylvania Uniform Money Judgments Recognition Act because the subject agreement contained an arbitration agreement that plaintiff refused to recognize. 2006 WL 2924814, at *7, Case No. CIV A 04-1626 (W.D. Penn., Oct. 10, 2006). Arbitration, which is an agreement to determine the merits in a particular forum, is not mediation. Foundry has not cited any authority stating that section 1716(c)(1)(D) applies here. Indeed, it does not. Regardless, Plaintiffs' good-faith efforts to engage in pre-litigation mediation, and indeed the later occurrence of an actual mediation, prevents 1716(c)(1)(D) from applying here. The Court should therefore reject dismissal premised on Section 1716(c)(1)(D).

### C. The Final Judgment Does Not Present Any Fundamental Fairness Concerns

Foundry also argues that the case should be dismissed because the Final Judgment violates the Recognition Act's fundamental fairness provisions. Foundry contends that the Final Judgment is "repugnant to the public policy of this state or of the United States" (Cal. Civ. Proc. Code § 1716(c)(1)(C)) and "rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment." Cal. Civ. Proc. Code § 1716(c)(1)(F). None of Foundry's argument withstands scrutiny.

First, Foundry contends that the Final Judgment violates public policy because of the Israeli District Court's "failure to enforce the pre-lawsuit contractual mediation requirement." Motion at p. 15. Plaintiffs argue that "[t]he Israeli District Court's failure to enforce the pre-lawsuit mediation requirement is squarely at odds with the position a California court would take when presented with the same facts." *Id.* at p. 16. Not so.

Under California law, when a plaintiff unsuccessfully attempts to engage in alternative dispute resolution pursuant to an agreement to do so before filing its complaint, the court must stay, rather than dismiss, the resulting complaint should defendant later seek to enforce the mediation provision. *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42*, 4 Cal. 3d 888, 899 (1971) ("Where plaintiff has attempted to exhaust its arbitration remedy or raises issues not susceptible to arbitration or not covered by the arbitration agreement, defendant may not merely assert failure to arbitrate as an affirmative defense; a stay rather than dismissal of the suit is then proper."); *see also Brosnan v. Dry Cleaning Station Inc.*, 2008 WL 2388392, at *2, Case No. C-08-02028 EDL (N.D. Cal., Jun 6, 2008) (applying the *Rounds* holding to a stay for a mandatory mediation provision).

Here, the Complaint alleges that Plaintiffs attempted to mediate the dispute before filing the Israeli Complaint, and agreed to stay the case so that mediation could take place once Foundry appeared in the Israeli action. (Compl ¶ 7; ¶¶17-18.)  Accordingly, the Israeli District Court was squarely in line with the position a California court would have taken when presented with the same facts.  Thus, the Israeli District Court's handling of the mediation requirement affirms, rather than violates, California public policy, and in no way precludes domestication of the Final Judgment.

Second, Foundry argues that the Israeli District Court's entrance of the Default Judgment on the same day that Plaintiffs requested it, and the Israeli District Court's refusal to consider the Fax as Foundry's answer, provide substantial doubt about the integrity of the Israeli District Court's process leading to the Final Judgment.  Foundry's argument fails factually and legally.

As set forth in the Complaint, after Foundry failed to respond to the Israeli Complaint within the time allotted, Plaintiffs only then requested entry of default judgment and the Israeli District Court entered the default judgment on that day. (Compl. ¶¶ 12-13.)  There are no facts within the Complaint that suggest this was in any way improper or contrary to law, much less that, ***as a matter of law***, the ministerial act of entering a default judgment upon request violates public policy or raises doubts about the integrity of the Israeli court system.  Rather, with the time allotted to answer, object, request an extension of time, or otherwise respond having been exhausted, any court would be positioned to enter judgment.

Yet this is ultimately irrelevant because it is the Final Judgment, and not the initial Israeli Default Judgment, that is the subject of Plaintiffs' domestication efforts.  The Final Judgment was not issued until

over two years after Plaintiffs filed the Israeli Complaint, and over eighteen months after the Default Judgment was entered. (Compl. ¶ 37.) Most importantly, in the intervening time, Foundry vigorously participated in the Israeli court processes by having appeared in the action (*Id.* ¶ 15); filed a motion to vacate the default judgment (*Id.* ¶ 23); participated in mediation while the action was stayed (*Id.* ¶ 18); had the motion to vacate default granted on terms set in compliance with Israeli law (*Id.*, Ex. 3); appealed the order setting the terms for vacatur of the default judgment (*Id.* ¶ 34); and refused to comply with those terms, even after they were affirmed by the Israeli Appellate Court. (*Id.* ¶ 36.) The Court should reject Foundry's attempt to unfairly and baselessly mischaracterize this process as cursory or as indicative of favoritism to the native Plaintiffs[2] based on Foundry obscuring the lengthy process by which the Final Judgment was reached, and especially the myriad opportunities Foundry squandered to resolve the dispute on the merits.

Further, the single case that Foundry cites for standing for the proposition that a hastily entered judgment can indicate a lack of due process actually demonstrates how much the Israeli Final Judgment in this case stands in contrast. In *Mulugeta v. Ademachew*, the Eastern District of Virginia found that domestication of an Ethiopian judgment was improper because "the speed of the Ethiopian judgments and the concerning and contradictory analysis upon which they rest, when viewed in combination with the evidence about the Ethiopian judiciary and [plaintiff's] status and known influence in Ethiopia" convinced the Court that the Ethiopian judgments raised substantial doubt about the rendering court. 407 F.Supp. 3d 569, 585 (E.D. Vir. 2019). The *Mulugeta* court found that the Ethiopian judgment did not warrant domestication only after considering the judgments rendered by the Ethiopian court, expert witness testimony as to the corrupt nature of the Ethiopian judicial system, and information as to plaintiff's status in Ethiopia.

---

[2] In a footnote, Foundry alleges that Plaintiffs' Israeli counsel had informed Foundry that "their ties to Israel's Prime Minister would ensure that the Israeli District Court would rule promptly in Plaintiff's favor – and, in fact, the Court did that very thing by issuing a same-day default judgment." This allegation is not present on the face of the Complaint and not the subject of judicial notice, and therefore completely improper for a Motion to Dismiss; it is also unsubstantiated by any supporting declaration or attestation; and it is purposely vague as to who made the statement, to whom, when, or in what context it was allegedly made. Most disturbingly, this improper statement has more than a whiff of slander, if not reliance on unspeakable and highly inappropriate tropes. The Court should disregard this utterly improper statement. Plaintiffs sincerely hope Foundry does not repeat such efforts.

     Here, as alleged in the Complaint, Foundry was afforded the ability to litigate the matter and did so over the course of about two years, even availing itself of an Israeli appellate court. When it did not like the outcome of that proceeding, namely that vacatur of the Default Judgment was conditional on meeting certain conditions, it elected to refuse to further participate in that lawful process. Further, the very fact that the Israeli District Court, later affirmed by the Israeli Appellate Court, provided Foundry the relief it sought (with conditions available under Israeli applicable procedure), completely guts the conclusory and wholly improper suggestion that the Israeli court lacked or lacks integrity. To the contrary, numerous other courts have domesticated Israeli judgments, belying the notion that there is any "doubt," much less a "substantial one" about the integrity of the Israeli courts. *See, e.g., Israel v. Flick Mortg. Investors, Inc.*, 23 So. 3d 1196 (2008) (Florida Court of Appeal domesticating final Israeli judgment under Florida Uniform Out-of-Country Foreign Money-Judgment Recognition Act); *Cotter v. Cotter*, 185 N.C. App. 511 (2007) (North Carolina Court of Appeal domesticating Israeli divorce judgment under North Carolina Foreign Money-Judgments Recognition Act); *Cassouto-Noff & Co. v. Diamond*, 487 Mass. 833 (2021) (Supreme Judicial Court of Massachusetts domesticating Israeli judgment under Massachusetts Uniform Money-Judgments Recognition Act).

     Lastly, Foundry argues that the Israeli District Court's refusal "to consider Foundry's timely response to the Israeli complaint on the basis that the response was written in English" represents a mischaracterization of the actual reasons for the Israeli Court's refusal to consider the Fax a proper answer, and is more of the same effort by Foundry to misstate the relevant facts as alleged in the Complaint to distract from the absence of any basis to not recognize the Israeli Final Judgment.

     In truth, as the Israeli District Court explained in its well-reasoned Default Judgment Order, which was attached to the Complaint, and as Foundry's Israeli Counsel conceded at the hearing on the Motion to Vacate Default Judgment, Foundry did not provide any evidence that the alleged answer, represented by the letter that was faxed, was ever actually delivered to the Israeli District Court prior to entrance of the Default Judgment. (Compl., Ex. 3 ¶ 9.) Additionally, the Israeli District Court notes that the alleged answer was written in English, contrary to Israeli procedural requirements; was not verified by affidavit, all of which were contrary to Israeli procedural requirements; and, once Foundry did bother to verify the answer, it was not verified by an attorney licensed to practice in Israel or a notary, contrary to Israeli

procedural requirements. (*Id.* ¶ 13.) Accordingly, although Foundry misleadingly argues that the Israeli District Court refused to consider the alleged answer because it was written in English, in truth, the Israeli District Court explicitly clarified that it did not consider the alleged Answer because it was improperly delivered (if delivered at all) to the Court and was completely noncompliant with the rules of the court. Foundry does not cite any authority stating that a foreign court must recognize a pleading filed with complete disregard for its rules to provide due process protection, because no such authority exists.

In addition to being factually deficient, Foundry's final argument is irrelevant as well because, despite these glaring deficiencies to the alleged answer, the Israeli District Court provided that the default judgment would be vacated upon conditions set in compliance with Israeli law. (*Id.* ¶ 20.) The Israeli Appellate Court affirmed this order following Foundry's appeal. (*Id.* ¶¶ 34-35.) It was only when Foundry refused to comply with the requirements for vacatur of the Default Judgment that the Final Judgment was issued. (*Id.* ¶ 37; Ex. 4.)

The facts in the Complaint demonstrate there was no lack of due process in the Israeli action, nor was there any indication of a lack of fundamental fairness. Foundry was afforded the opportunity to participate in the litigation and it did so. It achieved the opportunity to have the Default Judgment vacated, but then refused to comply with the reasonable requirements of the Israeli District Court and the Israeli Appellate Court. This Court should firmly reject Foundry's efforts to baselessly smear the integrity of the Israeli courts in this matter as Foundry has no one to blame but its own decisions in that case. Accordingly, there is no basis to grant dismissal under Section 1716(c)(1)(C) or Section 1716(c)(1)(F).

**D. Leave to Amend Should be Granted**

Finally, the Court should grant leave to amend to the extent it finds any deficiencies in the Complaint. Leave to amend should be liberally granted, particularly on a first pleading. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) ("Dismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."). Additionally, California law provides that a court may domesticate a foreign judgment despite the opposing party showing that a statutory exemption to domestication applies, if "the party seeking recognition of the judgment demonstrates good reason to recognize the judgment that outweighs the ground for nonrecognition." Cal. Civ. Proc. Code § 1716(c)(2). Plaintiffs should be afforded the opportunity to allege further facts, if

necessary, to demonstrate this is the case.

## V. CONCLUSION

For the reasons stated above, the Court should deny Foundry's Motion to Dismiss. In any event, leave should be granted to amend the complaint to cure any deficiencies the Court may find.

Respectfully submitted,

DATED: September 12, 2024       GREENBERG TRAURIG, LLP

By _____
TODD PICKLES
HENRY A. STROUD
Attorneys for Plaintiffs
E.Y. OROT ASSETS LTD. and OMEGA ECO DIAMONDS LTD.