Todd Pickles (SBN CA 215629)
Henry A. Stroud (SBN CA 342479)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, California 95814
Telephone: 916.442.1111
Facsimile: 916.448.1709
picklest@gtlaw.com
henry.stroud@gtlaw.com

Attorneys for Plaintiffs
E.Y. OROT ASSETS LTD. and OMEGA ECO DIAMONDS LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.Y. OROT ASSETS LTD., an Israeli company, and OMEGA ECO DIAMONDS LTD., an Israeli company,<br><br>       Plaintiffs,<br><br>v.<br><br>DIAMOND FOUNDRY INC., a Delaware corporation,<br><br>       Defendant. | CASE NO. 3:24-cv-03836-TLT<br><br>**PLAINTIFFS E.Y. OROT ASSETS LTD. AND OMEGA ECO DIAMONDS LTD.'S RESPONSES TO THE COURT'S OCTOBER 23, 2024 "QUESTIONS FOR PARTIES"**<br><br>**Hearing:**        October 29, 2024<br>**Time:**          2:00 p.m.<br>**Courtroom:**    9 |

## I.    INTRODUCTION

Plaintiffs E.Y. Orot Assets Ltd. and Omega Eco Diamonds Ltd. (together "Plaintiffs") hereby respond to the Court's "Questions for Parties," as served on Plaintiffs and Defendant Diamond Foundry Inc. ("Foundry") on October 23, 2024.  Should the Court require further clarification or should it consider granting the present motion, Plaintiffs request the opportunity to discuss their responses, and any other concerns the Court may have, at the October 29, 2024, hearing currently reserved for Foundry's Motion to Dismiss.  Dkt. No. 20.

## II.    RESPONSES TO QUESTIONS

### 1.    Governing Law

*A.  Please explain whether California law governed the Agreement between the parties.*

Short Answer:  The Agreement provides it is governed by California law although the enforceability of that provision was not resolved and is immaterial to the claims or present motion.

Explanation:  As Plaintiffs acknowledged in both the Complaint filed in this Court (ECF 1 ¶ 6), and in the Israeli Complaint (*Id.*, Ex. 1 ¶ 153), the Agreement provides that California law governs the terms of the Agreement.[1]  In the Israeli Complaint, Plaintiffs argued that the choice-of-law provision may be unenforceable for the reasons set forth in the Israeli Complaint.  *Id.* ¶ 159.  Nonetheless, in the alternative, Plaintiffs acknowledged in the Israeli Complaint that the Israeli court may determine that California law applied, and therefore Plaintiffs provided an extensive analysis of their claims, and of Foundry's liability, under California law, including by providing a written legal opinion by a California lawyer with respect to certain questions of California law relevant to their claims.  *Id.* ¶¶ 164-195.

The question of the enforceability of the choice of law provision was never reached by the Israeli court.  The default judgment was solely determined under Israeli procedural law and the Israeli court did not adjudicate the merits of any claims arising under the Agreement to which the choice of law provision might be relevant. (It is noted for the avoidance of doubt that Plaintiffs have never abandoned nor waived their position that the choice of law provision in the Agreement may be unenforceable.  *See*, *e.g.*, *Sutter*

---

[1] Plaintiffs note that they did not attach a copy of the Agreement to their complaint nor are bringing any claims based on or arising under the terms of the Agreement.  As such, Plaintiffs do not concede that the Agreement can properly be considered by the Court in connection with Foundry's motion under Rule 12(b)(6).  Nonetheless, this issue is moot because even if the Court were to consider the Agreement, Foundry's motion fails.

*Home Winery, Inc. v. Vintage Selections, Ltd.*, 917 F.2d 401, 407 (declining to enforce choice of law provision because the party seeking enforcement "drafted the [] agreement, and any ambiguity in the choice of law clause must therefore be construed against it.").)  As such, the choice of law provision is immaterial to Plaintiffs' claim under the Recognition Act.

> *B.  Please explain whether California law governed the dispute between the parties*

Short Answer:  California law governs the present dispute and the Israeli court applied Israeli procedural law in connection with the entry of the default judgment.

Explanation:  California law governs the instant dispute regarding enforcement of the Israeli Judgment under the California Uniform Foreign-Country Money Judgments Recognition Act (the "Recognition Act").  As to the underlying Israeli action, as noted, the Israeli courts applied Israeli procedural law with respect to the entry of a default judgment, which was the only issue adjudicated by the Israeli courts.  ECF 1, Ex. 4.  The Israeli courts never adjudicated whether California law applied to the merits of the underling dispute regarding Foundry's breach of the Agreement and was not the basis of the judgment entered.

> *C.  If California law governs the dispute between the parties, would applying Israeli law be a violation of the Agreement?*

Short Answer:  No because the Israeli judgment was based upon the application of Israeli procedural law.

Discussion:  The application of Israeli procedural law in entering default judgment was not a violation of the choice of law provision in the Agreement because default judgments are governed by the procedural laws of the forum state; in this case, Israel, and not the substantive law that may apply to the Agreement.  For example, in *Service Fin. Co. LLC v. Preferred Remodeling and Development Inc.*, No. CV 23-9681-DMG, 2024 WL 4452780, at *2 (C.D. Cal. Apr. 24, 2024), the district court applied Ninth Circuit procedural law while entering a default judgment related to the alleged breach of a contract with a Florida choice-of-law provision.  *Id*.  In so doing, the court rejected reliance on the contractual choice of law provision, explaining that "[w]hile Florida law allows liquidated damages on default judgment when adequately pleaded, this Court applies federal procedural law of the Ninth Circuit to determine this question."  *Id*.  This is consistent with other decisions in the Ninth Circuit in which courts apply the

1   federal procedural rules and federal decisional law, not state procedural law, in determining default

2   judgment, including in diversity cases in which state substantive law otherwise applies.  *See*, *e.g.*,

3   *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (affirming district court's application

4   of Ninth Circuit default judgment factors under *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)

5   to determine whether default was correctly entered in diversity jurisdiction case); *Coen Company, Inc. v.*

6   *Pan International, Ltd*., 307 F.R.D. 498, 503 (N.D. Cal. 2015) (applying Federal Rule of Civil Procedure

7   55(c) to determine whether default judgment should be vacated in diversity jurisdiction case).  Thus,

8   because the default judgment was decided as a matter of Israeli procedural law, the choice of law

9   provision in the Agreement was not implicated nor violated, even assuming the enforceability of the

10  California choice-of-law provision.

11          Moreover, whether the Israeli court should have applied California substantive law to the issue

12  regarding default judgment (which, as noted, it should not) is immaterial to Plaintiffs' claim under the

13  Recognition Act.  In particular, the alleged application of the incorrect law is not a ground that California

14  has established for non-recognition of a foreign judgment under the Recognition Act.  *See* Cal. Civ. Proc.

15  Code §§ 1716(b)(1-3); *Id.* §§ 1716(c)(1)(A-G).  To allow relitigating the choice-of-law provision would

16  amount to consideration of the merits of the parties' arguments made in the foreign forum, which is not

17  permitted under the Recognition Act.  *See Bank of Montreal v. Kough*, 612 F.2d 467, 473 (9th Cir. 1980)

18  ("To allow the defense that [defendant] now seeks to raise in the guise of counterclaims would undercut

19  the validity of the judgment against him, and permit him to relitigate the case de novo.").  Regardless, the

20  issue is academic because the application of Israeli procedural law was not a violation of the choice-of-

21  law provision in the Agreement.

22          **2.  The Mediation Requirement**

23                  *A.  Please explain why the mediation requirement, if it is a condition precedent of filing suit,*

24                  *would not apply to section 1716(c)(1)(D).*

25          Short answer:  Section 1716(c)(1)(D) does not apply to non-binding mediation.

26          Explanation:  The plain language of California Code of Civil Procedure section 1716(c)(1)(d) (the

27  "Alternative Determination Section") does not apply to non-binding mediation such as that envisioned by

28  the Agreement.  Rather, the Alternative Determination Section states that a court shall not recognize a

foreign-country judgment if "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question *was to be determined otherwise than by proceedings in that foreign court.*" Cal. Civ. Proc. Code § 1716(c)(1)(D) (emphasis added). In other words, Section 1716(c)(1)(D) only applies if an agreement expressly provides that the dispute is to be "determined" by a manner different than the foreign court. Here, the Agreement provides only that the Parties "agree to *attempt to resolve* any dispute, claim or controversy arising out of or relating to this Agreement by mediation . . ." Agreement, ECF 38-01 ¶ 6.9 (emphasis added). That language does not trigger Section 1716(c)(1)(D).

In particular, the plain language of the Alternative Determination Section under the Act demonstrates that it does not apply to the mediation provision in the Agreement because the Agreement does not specify that a mediator has the authority to conclusively "determine" a dispute. Indeed, the Agreement notes only the parties should "attempt to resolve" the dispute through mediation—*i.e.*, use a mediator to try to help amicably resolve the dispute before resorting to litigation or arbitration, by which a neutral arbiter would "determine" the dispute in question. This is consistent with the treatment of mediation under California law. *Cf. Gaines v. Fidelity National Title Ins. Co.*, 62 Cal. 4th 1081, 1096 (2016) ("By contrast [to arbitration], mediation is not an event *outside* the lawsuit; it is one means by which a settlement *of the* lawsuit may be reached."); *see also Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1624-25 (2006) (declining to recognize a settlement agreement that required binding mediation because binding mediation is not provided for in California law: "A case-by-case determination that authorizes a 'create your own alternate dispute resolution' regime would impose a significant burden on appellate courts to create a body of law on what can and cannot be done, injecting *more* complexity and litigation into a process aimed at less."). Indeed, as the California Supreme Court explained in *Gaines*, "[e]ven after a case has been ordered to mediation, the mediator must inform the parties that participation in mediation is completely voluntary, refrain from coercing a party to continue its participation in the mediation and respect the right of each party to decide the extent of its participation or withdraw from the mediation." 62 Cal. 4th at 1103. Thus, agreement to mediate is not in form or substance equivalent to an "agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court." Accordingly, the terms of the Agreement itself and the treatment

1    of mediation under California law demonstrate the inapplicability of Section 1716(c)(1)(D).

2           To that end, Foundry did not cite a single case in their Motion or Reply that states that the

3    Alternative Determination Section applies to non-binding mediation.  Rather, the cases relate to

4    arbitration provisions, which unlike the mediation set forth in the Agreement, do result in a

5    "determination" outside of a court.  *See Montebueno Marketing, Inc. v. Del Monte Foods Corp.-USA*,

6    No. CV 11-4977 MEJ, 2012 WL 986607, at *1 (N.D. Cal. Mar. 22, 2012) (arbitration clause in subject

7    agreement "required them to *resolve* any disputes through *arbitration* in San Francisco, California.")

8    (emphasis added); *Grundig Multimedia AG v. Etón Corp.*, No. 20-cv-05206-NC, 2021 WL 411237, at *4

9    (N.D. Cal. Feb. 5, 2021) ("This defense does not apply broadly to the breach of merely *any* term in an

10   Agreement; rather, it asks specifically whether the parties contractually agreed to *resolve* disputes in one

11   particular manner, but a foreign court adjudicated the dispute instead.") (emphasis added); *Tyco Valves &*

12   *Controls Distribution GmbH v. Tippins, Inc.*, No. CIV A 04-1626, 2006 WL 2924814, at *7 (W.D. Pa.

13   Oct. 10, 2006) ("Because the German proceeding was contrary to the parties' agreement *to arbitrate*, we

14   decline to enforce it here.") (emphasis added).  Accordingly, the presence of a mediation provision is

15   insufficient for Foundry to meet its burden of showing that an exception to recognition applies, including

16   under Section 1716(c)(1)(D).  *De Fontbrune v. Wofsy*, 409 F.Supp. 3d 823, 831-32 (N.D. Cal. Sep. 12,

17   2019) ("A court must recognize the foreign judgment unless the resisting party can carry its burden.")

18          *B.   Please provide any authority (statutory or case law) that stands for the proposition that a*

19                *failure to respond is an exception to a condition precedent?  Explain how this authority*

20                *applies to this case.*

21          Short Answer:  By failing to respond to Plaintiffs' requests for mediation for six months, Foundry

22   rejected Plaintiffs' requests for mediation and allowed Plaintiffs to proceed to litigation.

23          Authority:  In *Frei v. Davey*, 124 Cal. App. 4th 1506 (2004), plaintiff and defendant entered into

24   an agreement which required that the parties "mediate any dispute or claim arising between them out of

25   this Agreement, or any resulting transaction, before resorting to arbitration or court action . . ."  *Id.* at

26   1509.  If any party failed to mediate, that party lost its right to seek attorney's fees in subsequent

27   litigation.  *Id.*  Plaintiff requested that defendant mediate on November 30, 2000, but defendant did not

28   respond.  *Id.* at 1513.  Plaintiff filed the complaint in December, 2000, one month after plaintiff initially

requested mediation, and before defendant responded to that request. *Id.* Defendant finally confirmed that he was unwilling to mediate in January 2001, after the Complaint had been filed. *Id.* Defendant won at trial, and later sought reasonable attorney's fees pursuant to the contract. The trial court held that defendant was entitled to attorney's fees because "there was no evidence to support a finding that the defendants refused to mediate, and the fees are appropriate." *Id.* at 1510. The *Frei* court reversed, finding that there "is no substantial evidence supporting the trial court's finding that [defendant] did not refuse to mediate." *Id.* at 1513. Among other arguments, defendant contended that there was no refusal because plaintiff filed the complaint before defendant responded to the request for mediation. The *Frei* court rejected that argument, finding that "a party responding to a request to mediate must do so within a reasonable time." *Id.* at 1516. The court noted that plaintiff provided a period of two months to agree to mediation, that time period "was reasonable," and defendant "failed to agree to mediate within that period." Accordingly, defendant waived the contractual right to attorney's fees by ignoring plaintiff's pre-litigation requests for mediation.

Here, as in *Frei,* the Complaint alleges that Plaintiffs requested that Foundry mediate the claim before filing the Israeli Complaint, but that Foundry failed to respond to that request. ECF 1, Ex. 1 ¶ 23-24 ("[T]he plaintiffs reiterated their demand to activate the mediation mechanism set forth in the agreement . . . However, this letter from the plaintiffs remained unanswered. . ."). Further, the Israeli Court noted that Foundry failed to respond to Plaintiffs' request for mediation for six months before Plaintiffs filed the Israeli Complaint. *Id.*, Ex. 3 ¶ 16 ("[P]laintiffs rightly claim that in Section 4 of their attorney's letter . . . about half a year before filing the lawsuit, they announce their agreement to resort to mediation . . . [Foundry] did not bother to reply to this letter and in any case did not respond to the offer to go to mediation, so there is no basis for their claim in this regard."). Accordingly, under California law as set forth in *Frei*, Foundry's failure to respond to a request for mediation for six months (3 times longer than *Frei*) is considered a rejection that does not preclude filing of a lawsuit.

A contrary conclusion would mean that in the case of a mediation provision similar to that in the Agreement, the breaching party could forever avoid any litigation by simply refusing to respond to a mediation request. Plaintiffs have located no case law that supports such a result and Foundry cited none in its papers. Furthermore, Section 1716(c)(2) of the Recognition Act states that notwithstanding the

1 exceptions to recognition, including the Alternative Determination Section, the "court may nonetheless

2 recognize a foreign-country judgment if the party seeking recognition of the judgment demonstrates good

3 reason to recognize the judgment that outweighs the ground for nonrecognition."  Cal. Civ. Proc. Code §

4 1716(c)(2).  Such good reason exists here because under Foundry's proposed interpretation of the

5 Agreement, its refusal to respond to Plaintiffs' requests for mediation would render Plaintiffs utterly

6 devoid of any enforcement mechanism for Foundry's alleged breach of the Agreement, in courts both

7 foreign and domestic.  At the very least, Plaintiff should be permitted to amend and plead facts to support

8 the application of Section 1716(c)(2).

9      Beyond mediation, courts have held that a party's failure to respond to another party's attempts to

10 satisfy a condition precedent excuses the requesting party from that condition.  *See FNBN Rescon I, LLC*

11 *v. Citrus El Dorado, LLC*, 725 Fed. App'x 448, 451 (9th Cir. 2018) ("Under California law, if one

12 contracting party prevents the other from performing a condition precedent, the party that is subject to the

13 condition is excused from performing it.").  For example, in *Alliance Atlantis Releasing Ltd. v. Bob Yari*

14 *Productions*, No. CV 08-5526-GW, 2010 WL 1525687 (C.D. Cal. Apr. 12, 2010), the parties were

15 contractually obligated to engage in good faith negotiation before plaintiff could assign the agreement to

16 a third party.  Plaintiff made multiple monetary offers to defendant, to which defendant did not respond.

17 Accordingly, plaintiff assigned the agreement.  On summary judgment, defendant argued that plaintiff

18 failed to satisfy the condition precedent of engaging in good faith negotiation before assigning the

19 agreement.  The court in *Alliance* disagreed, finding:

20         Plaintiffs have shown that they negotiated in good faith as required by the []
21         Agreements . . . Even after [Defendant] responded by ***refusing to negotiate***,
        Plaintiffs proposed to reduce the Guarantee to $300,000.  [Defendant] ***failed to***
22         ***respond to that offer, thereby ending the negotiations***.  "It is hornbook law that
        where one contracting party prevents the other's performance of a condition
23         precedent the party burdened by the condition is excused from performing it."

24 *Id.* at *12 (citing *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490 (2008).

25      Here, as in *Alliance*, Foundry cannot argue that Plaintiffs failed to satisfy a condition precedent

26 where Foundry's refusal to respond to Plaintiffs' efforts were the cause of that failure.  This is further

27 consistent with the provision of the Agreement that expressly states "good faith participation" regarding

28 mediation is a condition precedent.  Where, as alleged, Foundry did not act in respond to Plaintiffs' good

faith efforts to mediate, it cannot now claim the benefits of that provision.

Ultimately, however, the Court need not resolve the question of an exception to the condition precedent because (1) Section 1716(c)(1)(D) does not apply to non-binding mediation; (2) Plaintiffs did "attempt" to mediate by sending a request to mediate to which Foundry did not respond for six months prior to litigation, thus fulfilling the condition precedent; and (3) the facts alleged, or which could be alleged, amply support application of Section 1716(c)(2).

### 3. Mediation During Litigation

    A.  *Please explain whether mediation during litigation satisfied the mediation requirement in the Agreement.*

<u>Short Answer</u>:  Mediation during litigation satisfied the mediation provision of the Agreement.

<u>Explanation</u>:  As alleged in the Complaint, once Foundry finally appeared in the Israeli action, the Parties stipulated to stay proceedings so that they could engage in mediation.  ECF 1 ¶ 17.  The Israeli court permitted this to occur and the Parties then engaged in mediation.  *Id.* ¶ 18.  The same procedure would have occurred under California law, which provides for a stay of proceeding to allow for meditation where a party unsuccessfully makes a reasonable attempt to mediate prior to litigation pursuant to a mediation provision in the subject agreement.  *Cf. Charles J. Rounds Co. v. Joint Council of Teamsters No. 42*, 4 Cal. 3d 888, 899 (1971) ("Where plaintiff has attempted to exhaust its arbitration remedy or raises issues not susceptible to arbitration or not covered by the arbitration agreement, defendant may not merely assert failure to arbitrate as an affirmative defense; a stay rather than dismissal of the suit is then proper.").

As the Court notes in *Bellingham Marine Indus., Inc. v. Del Rey Fuel, LLC*, No.  CV 12-05164 MMM, 2012 WL 12941958, at *5 (C.D. Cal. Oct. 19, 2012), the court found that dismissal was proper where plaintiff failed to mediate a claim prior to filing litigation, as was required under the subject contract.  Plaintiff argued that defendants should be estopped from invoking the mediation requirement because Plaintiff attempted to mediate before filing suit.  *Id.*, at *7.  The court found that this argument was unavailing because plaintiff sent the request on Friday, June 8, and demanded mediation by Monday, June 11 or Tuesday, June 12.  *Id.*  Thus, the court found, "it was impossible for defendants to comply with [plaintiff's] request to mediate," so plaintiff had "not adequately demonstrated that they are claiming

1   the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."

2   *Id.  Bellingham* is inapposite here, where Plaintiffs requested pre-litigation meditation pursuant to the

3   terms of the Agreement six months before filing the Israeli Complaint.

4           Similarly, in both of the cases cited in the Court's questions to Foundry requiring dismissal of a

5   suit for failure to mediate, the courts note that the plaintiff made no pre-litigation mediation request.

6   *Brosnan v. Dry Cleaning Station, Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *2 ("[W]here a

7   plaintiff has attempted to exhaust its arbitration remedy . . . a stay rather than dismissal of the lawsuit is

8   appropriate . . . Here, there is no dispute that Plaintiffs did not pursue mediation prior [to] filing this

9   lawsuit.") (citation and internal quotations omitted); *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C

10  07-02864 JSW, at *2 (N.D. Cal. Nov. 1, 2007) ("Although the [agreement] requires mediation as a

11  condition precedent to filing an action, *[plaintiff] alleges that mediation is not required* for actions in

12  equity and/or the mediation requirement has been waived by [defendant].") (emphasis added)).  Thus,

13  under California law, where a defendant invokes its contractual right to mediation despite the plaintiff's

14  unrequited reasonable pre-litigation attempts to mediate, the mediation requirement is satisfied by staying

15  proceedings and mediating during litigation.

16          Ultimately, this issue is also immaterial to resolution of the pending motion.  Whether a court

17  applying federal or state procedural law might have acted differently from the Israeli court regarding

18  application of the mediation provision is immaterial to recognition of a foreig the Recognition Act.  As

19  demonstrated above, Section 1716(c)(1)(D) does not apply to mediation.  Moreover, the Recognition Act

20  does not allow for relitigating an issue resolved in the foreign court.  Lastly, Plaintiffs have alleged and

21  can allege facts to support application of Section 1716(c)(2).

22  **III.     CONCLUSION**

23          This case should not be dismissed because the Israeli Court applied Israeli procedural law when

24  finding that Foundry was in default, because the Alternative Determination Section does not apply to

25  non-binding mediation, because Foundry waived its right to compel mediation by failing to answer

26  Plaintiffs' pre-litigation mediation requests, and because the Israeli Action was properly stayed, rather

27  than dismissed, once Foundry subsequently demanded mediation.

28  ///

1

2    DATED:  October 25, 2024

3

4    By

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

GREENBERG TRAURIG, LLP

By _____
TODD PICKLES
HENRY A. STROUD
Attorneys for Plaintiffs
E.Y. OROT ASSETS LTD. and OMEGA ECO
DIAMONDS LTD.