1
2
3
4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   E.Y. OROT ASSETS LTD., et al.,              Case No. 24-cv-03836-TLT

8                       Plaintiffs,

9          v.                                   **ORDER DENYING MOTION TO
                                                DISMISS**
10  DIAMOND FOUNDRY INC.,                       Re: Dkt. No. 20

11                      Defendant.

12

13          Plaintiff E.Y. Orot Assets Ltd. and Plaintiff Omega Exo Diamonds Ltd. are Israeli

14  importers of raw laboratory diamonds with principal places of business in Tel Aviv, Israel.  ECF

15  1, Ex. 1.  Plaintiffs are business partner entities.  ECF 1, Complaint ("Compl.") ¶ 2.  Defendant,

16  Diamond Foundry Inc., is a company that grows laboratory diamonds with a principal place of

17  business in South San Francisco, California.  *Id.*

18          Before the Court is Defendant's Motion to Dismiss pursuant to five sections of California's

19  Uniform Foreign-Country Money Judgment Recognition Act: (1) that the Israeli proceeding was

20  contrary to the parties' Agreement to resolve the dispute— Section 1716 (c)(1)(D); (2) that the

21  Israeli judgment violates public policy— Section 1716(c)(1)(C); (3) that the judgment was

22  rendered in circumstances that raise substantial doubt as to the integrity of the rendering court—

23  Section 1716 (c)(1)(F); and (4) that the proceeding in the Israeli court was incompatible with the

24  requirements of the due process of law— Section 1716 (c)(1)(G) and (5) that there is no "good

25  reason" to recognize the judgment that outweighs the ground for nonrecognition— Section 1716

26  (c)(2).

27          After careful review of the motions, briefs, and oral arguments, the Court **DENIES** the

28  motion to dismiss pursuant to Section 1716 (c)(1)(D).  The Court also **DENIES** the motion to

United States District Court
Northern District of California

dismiss as to Section 1716(c)(1)(C), Section 1716 (c)(1)(F), and Section 1716 (c)(1)(G) of the Act.

Finally, the Court **DENIES** the motion to dismiss pursuant to Section 1716 (c)(2) as moot.

## I.    BACKGROUND

Plaintiffs and Defendant entered into an agreement entitled "Foundry-As-A-Service Agreement" ("Agreement") that was executed on October 14, 2020.  Compl. ¶ 6.  As part of the Agreement, Plaintiff Orot prepaid Defendant a deposit of $2,500,000 and committed to purchase diamonds from Defendant for five years.  *Id.*  In the absence of a forum selection clause, the Agreement provided that the laws of California would be applicable to any dispute.  *Id.*  The Agreement also included a provision requiring mediation prior to the commencement of litigation. *Id.*  Specifically, it stated that:

> The Parties further agree that their respective good faith participation in mediation is a condition precedent to pursuing any other available legal or equitable remedy, including litigation, arbitration, or other dispute resolution procedures.

ECF 38, Ex. A.

After Defendant allegedly provided Plaintiffs with diamonds whose quality did not meet the standard provided in the contract, Plaintiffs contended that Defendant breached the contract.  ECF 1, Ex. 15-17.  Plaintiffs then brought claims against the Defendant for breach of contract, breach of warranty, and false promise.  Compl. ¶ 8; ECF 1, Ex. 1 ¶ 15.

## II.    PROCEDURAL HISTORY

On March 27, 2022, after the dispute between the parties, Plaintiffs filed the procedural equivalent of a complaint in the District Court of Tel Aviv of the State of Israel ("Israeli District Court") requesting 15,000,000 New Israeli Shekels, or $4.65 million,[1] worth of damages.  Compl. ¶ 7.  Plaintiffs paid the court filing fee of NIS 187,500 (equivalent to $58,000), a fee which the Israeli District Court calculates as a percentage of the monetary damages requested.  *Id.* ¶ 9.

On July 6, 2021, Plaintiffs served Defendant a professionally translated copy of the Israeli Complaint in accordance with the Israeli District Court rules.  Compl. ¶ 11.  On August 14, 2022, Plaintiffs moved the Israeli District Court to enter default judgment in favor of Plaintiffs and

---

[1]All monetary exchange estimations are calculated based on the exchange rates at the time.

against Defendant because Defendant failed to file a statement of defense or answer within the time period applicable under Israeli procedural law. *Id.* ¶ 12. On that same day, the Israeli District Court entered judgment for Plaintiffs in the amount of NIS 15,287,500 plus interest. *Id.* ¶ 13.

Plaintiffs sent the Default Judgment to Defendant on or about September 2, 2022. *Id.* ¶ 14. On September 3, 2022, the Israeli District Court received a letter from Defendant's Head of Finance who stated that he had attempted to send the Israeli District Court a response to the Israeli Complaint in June 2022 and requested that the Israeli District Court deny all claims. *Id.* ¶ 15.

On October 6, 2022, Defendant hired Israeli counsel and filed a motion to set aside the Israeli Default Judgment. *Id.* ¶ 16. On December 8, 2022, Plaintiffs and Defendant filed a joint stipulation for a stay of proceedings before the Israeli District Court so that the parties could pursue mediation through the JAMS mediation institute. *Id.* ¶ 17. The parties then engaged in mediation on May 3, 2023 before the Hon. Robert Dondero in San Francisco. *Id.* ¶ 18. After mediation was unsuccessful, the parties notified the Israeli District Court, and Plaintiffs filed their opposition to Defendant's motion to set aside the Israeli Default Judgment on July 3, 2023. *Id.* ¶ 18, 20.

On July 10, 2023, the parties submitted a joint stipulation to the Israeli District Court, requesting that the Court hold the proceedings in abeyance for 30 days to allow the parties to engage in further settlement discussions, which was then extended another 30 days. *Id.* ¶ 21.

On August 17, 2023, the parties again notified the court of the failure of their settlement discussions to resolve the case. *Id.* ¶ 22. On September 6, 2023, Defendant filed its reply to Plaintiffs' opposition to Defendant's 2022 motion to set aside the default judgment. *Id.* ¶ 23. A hearing date was set for October 10, 2023, but was extended to January 10, 2024 with an additional hearing on January 18, 2024. *Id.* ¶ 24-26.

The Israeli District Court denied Defendant's motion to set aside the default judgment on January 19, 2024, finding that there were no procedural defects with respect to the Israeli Default Judgment. *Id.* ¶ 28. It found that there was no proof that Defendant had submitted a timely responsive pleading to the complaint and that Defendant did nothing to ensure or confirm a timely

submission of its defense. *Id.* Instead, Defendant only contacted the Israeli District Court after it received notice of the default judgment. *Id.* Furthermore, the court held that although Defendant claimed ignorance of the Israeli judicial system, it hired competent Israeli legal counsel and that its arguments lacked merit. *Id.* ¶ 29. The Israeli District Court determined that it could exercise its discretion to set aside the default judgment and give Defendant another day in court, but only on the condition that Defendant first deposit NIS 3,000,000 (approximately $810,000) in cash or letter of credit with the court no later than February 18, 2024. *Id.* ¶ 30.

On February 15, 2024, Defendant appealed the January 19, 2024 decision to the Israeli Appellate Court. *Id.* ¶ 31. It also filed an emergency motion to stay enforcement of the Israeli District Court's decision until the appeal was decided. *Id.* That same day, February 15, 2024, the Israeli Appellate Court granted Defendant's request for a temporary injunction of enforcement of the judgment until the appeal was decided. *Id.* ¶ 32.

On March 12, 2024, the Israeli Appellate Court denied Defendant's appeal, holding that the Israeli District Court properly exercised its discretion in setting aside the default judgment conditional on the deposit of NIS 3,000,000 (approximately $810,000) and the payment of certain court fees. *Id.* ¶ 35. The Israeli Appellate Court extended the date for Defendant to comply with the terms of the judgment from January 19, 2024 to March 31, 2024. *Id.* Defendant, however, failed to deposit any funds with the Israeli District Court. *Id.* ¶ 36.

On April 10, 2024, the Israeli District Court issued a summary order reflecting its final judgment. *Id.* ¶ 37. The final judgment reaffirmed the Israeli District Court judgment dated August 14, 2022, and ordered a final award to Plaintiffs in the amount of NIS 18,794,006 (approximately $5,109,843.94). *Id.* ¶ 39. This included NIS 15,000,000 in damages, NIS 3,435,656 in interest accrued since the day of judgment, NIS 187,500 as reimbursement for the Court Filing Fee, NIS 42,946 in interest accrued on the Court Filing Fee, and NIS 127,904 in nominal attorneys' fees and expenses. *Id.* ¶ 39. After the final judgment, Defendant did not file any further challenges or appeals in Israel. *Id.* ¶ 40.

Plaintiffs then filed a complaint for domestication of the Israeli final judgment before the Court on June 26, 2024. ECF 1. Defendant filed a motion to dismiss on August 29, 2024. ECF

20. Plaintiffs filed an opposition and Defendant filed a reply. ECF 25 (Opposition); ECF 27 (Reply). The Court heard oral argument on the case on October 29, 2024, and thereafter took the matter under submission. ECF 41.

## III.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). The Court's review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact contained in the complaint are taken as true. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *Id*. at 558–559. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

### B.    Uniform Foreign-Country Money Judgments Recognition Act

California enacted the Uniform Foreign-Country Money Judgments Recognition Act ("UFMJRA"), which is codified under California Code of Civil Procedure section 1713, *et seq. See* Cal. Civ. Proc. Code § 1713 ("This Chapter may be cited as the Uniform Foreign-Country Money Judgments Recognition Act."). The Recognition Act applies to all foreign-country judgments if the judgment (1) "[g]rants or denies a sum of money" and (2) is final, conclusive, and enforceable in the foreign country that rendered the judgment. *Id.* § 1715(a). The Recognition Act does not apply when the judgment is (1) a "judgment for taxes," (2) "a fine or other penalty,"

1    and (3) a family law matter, such as "divorce, support, or maintenance." *Id.* § 1715(b).

2        "A party seeking recognition of a foreign-country judgment has the burden of establishing

3    that the foreign-country judgment is entitled to recognition under this chapter." *Id.* § 1715(c).

4    Once the party seeking recognition has met its burden of establishing "recognition of the foreign-

5    country judgment pursuant to subdivision (c) of Section 1715," the burden shifts to the party

6    resisting recognition to establish that a ground for nonrecognition exists pursuant to subdivisions

7    (b), (c), or (d) of Section 1716 exists. *Id.* § 1716(e).

8        Subdivision (b) provides three situations in which recognition does not apply, including (1)

9    if the foreign country does not have an impartial tribunal or "procedures compatible with

10   requirements of due process of law," (2) if the foreign court lacked personal jurisdiction over the

11   defendant, or (3) if the foreign court lacked "jurisdiction over the subject matter." *Id.* § 1716(b).

12   Next, subdivision (c)(1) provides six situations in which a foreign judgment would not apply,

13   including (A) if the defendant did not receive notice of the proceeding with enough time to

14   participate, (B) if the judgment was obtained by fraud "that deprived the losing party of an

15   adequate opportunity to present its case," (C) if the judgment is "repugnant to the public policy" of

16   California or the United States, (D) if the proceeding was "contrary to an agreement between the

17   parties under which the dispute in question was to be determined otherwise than by proceedings in

18   that foreign court," (E) if the foreign court was "a seriously inconvenient forum for the trial of the

19   action," (F) if there are substantial doubts as to the integrity of the judgment, or (G) if the

20   proceedings were incompatible with due process. *Id.* § 1716(c)(1).

21       Even if there is an applicable ground for nonrecognition, the court may recognize a

22   foreign-country judgment if "the party seeking recognition of the judgment demonstrates good

23   reason to recognize the judgment that outweighs the ground for recognition." *Id.* § 1716(c)(2).

24   Recognition is not required, however, if the foreign-country judgment conflicts with another final

25   and conclusive judgment. *Id.* § 1716(d).

## IV.    DISCUSSION

### A.    The Israeli Default Judgment Does Not Violate Section 1716(c)(1)(D).

28       UFMJRA Section 1716(c)(1)(D) states that a court will not recognize a foreign-country

United States District Court
Northern District of California

judgment if the proceedings of the foreign court were contrary to a provision in the parties' agreement requiring the parties to adjudicate the dispute elsewhere.  Courts have applied this provision to cases that where the parties had an agreement that contained an arbitration provision.  For example, in *Montebueno*, the court elected not to enforce a judgment from the Philippines because the parties' original contract had a valid and enforceable arbitration clause that required the parties to arbitrate their dispute in San Francisco.  *Montebueno Marketing, Inc. v. Del Monte Foods Corp.*, CV 11-4977 MEJ, 2012 WL 986607, at *1 (N.D. Cal. Mar. 22, 2012).  In *Grundig*, the court recognized a Swiss judgment when the parties' original agreement provided that disputes would be brought in the Swiss court.  *Grundig Multimedia AG v. Eton Corp.*, No. 20-cv-05206-NC, 2021 WL 411237, *5 (N.D. Cal. Feb. 5, 2021).  Similarly, in *Tyco Valves*, the court refused to recognize a German judgment when there was a valid and enforceable arbitration clause agreement between the parties that mandated arbitration in Vienna, Austria.  *Tyco Valves & Controls Distribution GmbH v. Tippins, Inc.*, CIV A 04-1626, 2006 WL 2924814, at *5 (W.D. Pa Oct. 10, 2006).

The instant case, however, involves mediation rather than arbitration.  Mediation differs from arbitration in that parties do not "assert claims for relief or make demands for a legal remedy" during mediation.  *Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1178 (E.D. Cal. 2010).  While mediating, the parties voluntarily reach their own agreement, and the mediator does not "impose a binding decision on the parties." *Id.* at 1180.  The parties are also not required to resolve their dispute during a mediation.  *Id.* at 1178.  In contrast, an arbitrator could make a binding decision on the parties, which is final and legally enforceable.  *Id.*

Courts have yet to address the issue of domestication of foreign judgment involving a mediation condition precedent.  Courts, however, have ruled on domestic cases involving mediation condition precedents.  They have determined that "[f]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal." *Delamater*, 722 F. Supp. 2d at 1180-81; *see also Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *2 (N.D. Cal. 2008) (finding that defendants are entitled to dismissal when parties have failed to fulfill a mediation condition precedent).  The court

in *Bellingham Marine Indus., Inc. v. Del Rey Fuel, LLC* even determined that concurrent mediation and litigation was insufficient to satisfy a condition precedent, and ultimately dismissed the case "without prejudice to the filing of a new action once the parties have mediated their dispute." 2012 WL 12941958, at \*5, \*10 (C.D. Cal. Oct. 19, 2012).

When courts have dismissed cases for failing to fulfill the mediation condition precedent, they have dismissed them without prejudice to allow the parties to mediate. For instance, in *Delamater*, the court held that the parties failed to "satisfy the condition precedent necessary to trigger the right to initiate litigation," and granted summary judgment. *Id.* at 1180. It determined that the complaint was premature and dismissed the complaint without prejudice. *Id.* at 1181. The court did the same in *B&O Mfg., Inc. v. Home Depot USA*. No. C 07-02864 JSW, 2007 WL 3232276, at \*8 (N.D. Cal. Nov. 1, 2007). Even though the defendant had initially refused to mediate, the *B&O* court dismissed the case without prejudice because the defendant informed the court that it no longer resisted mediation and determined that mediation would be "tremendously useful." *Id.* (quotations omitted). Similarly, the court in *Bellingham* determined that a condition precedent to mediate still applied and dismissed the case when defendant initially refused to mediate. 2012 WL 12941958, at \*7. In that case, the court determined that the plaintiff's request was not in good faith and that it was impossible for defendants to comply with their request to mediate. *Id.*

The present case can be distinguished both from the prior cases that applied Section 17616(c)(1)(D) and the cases that were dismissed for failing to adhere to mediation condition precedents. First, the prior cases that applied Section 17616(c)(1)(D) all involved arbitration clauses. Here, there is no arbitration clause. Compl. ¶ 6. The Agreement also did not have a forum selection clause, unlike in *Montebueno Marketing*, where the parties had an agreement to arbitrate in San Francisco. *Id.* at 6; 2012 WL 986607, at \*1. Instead, the Agreement only provided a condition precedent indicating that the parties must mediate before filing suit. Compl. ¶ 6. The issue, therefore, is not that the Plaintiffs filed suit in Israel, but that they filed a complaint before mediating.

Next, this case is distinguished from the other cases involving mediation condition

precedents because Plaintiffs in this case did mediate. While it is undisputed that Plaintiffs filed a complaint in Israel before any mediation, and that the Israeli District Court issued a default judgment prior to any mediation, the Israeli District Court stayed the case from December 8, 2022 to August 17, 2023 to allow the parties to mediate. Compl. ¶ 17. During that time, the parties mediated before a retired judge in San Francisco. *Id.* ¶¶ 18, 22. It was only after the mediation efforts failed that the litigation continued. *Id.* ¶ 22-23. The Israeli District Court determined that it would set aside the default judgment that occurred before the mediation if Defendant deposited NIS 3,000,000 (approximately $810,000) with the Israeli District Court. *Id.* ¶ 30. While the court in *Bellingham* determined that a concurrent mediation was insufficient to comply with the condition precedent, this case can be distinguished in that the parties mediated prior to continuing litigation, and that the default judgment would have been overturned had Defendant deposited the funds. 2019 WL 12941958, at *5. The Israeli District Court's ruling that stayed the case for the parties to litigate was similar to courts' rulings to dismiss cases without prejudice to allow the parties to mediate. While the difference is that the Israeli District Court did not dismiss the case or unconditionally vacate the default judgment, the result is still similar because the parties mediated and then returned to litigation once the mediation failed.

The Court notes that this is a matter of first impression. It finds that because the Israeli District Court stayed the present case to allow the parties to mediate, and because the Agreement between the parties does not otherwise forbid litigation in Israel, the proceedings in Israel were not contrary to the parties' Agreement. The Court, therefore, **DENIES** Defendant's Motion to Dismiss pursuant to Section 1716(c)(1)(D).

### B. The Israeli Default Judgment Does Not Violate Section 1716's Fundamental Fairness Requirements.

#### i. Section 1716(c)(1)(C)

The fairness provision under Section 1716(c)(1)(C) states that a court in this state will not recognize a foreign judgment if the judgment "is repugnant to the public policy of this state or the United States." "California courts have set a high bar for repugnancy under the Uniform Act." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1002 (9th Cir. 2013). Courts measure this standard

not by whether the foreign judgment is contrary to our public policy, but instead by whether the judgment is "*so* offensive to our public policy as to be prejudicial to recognized standards of morality and to the general interests of citizens." *Id.* (emphasis in original) (internal citations omitted). Even if a foreign judgment offends public policy, it will only not be recognized if it is "so antagonistic to California [or federal] public policy interests as to preclude the extension of comity." *Id.* (internal citations omitted). In fact, only judgments "presenting a direct and definite conflict with fundamental American constitutional principles will be denied recognition [as] repugnant [to public policy]." *Capital Bank of Jordan v. Alaeddin*, 22-cv-01597-FWS-KES, 2023 WL 9319000, at *15 (C.D. Cal. Dec. 1, 2023) (internal citations omitted). Finally, few "judgments fall in the category of judgment that need not be recognized because they violate the public policy of the forum." *Arab Monetary Fund v. Hashim (In re Hashim)*, 213 F.3d 1169, 1172 (9th Cir. 2000) (internal quotations omitted).

The issue of whether the parties violated their Agreement by failing to mediate before filing suit does not rise to the level of repugnant. The Israeli District Court's failure to dismiss the case prior to granting a default judgment because the parties failed to mediate is not offensive to morality or the general interests of citizens. It also does not conflict with fundamental American constitutional principles. As this issue is not repugnant to public policy, Section 1716(c)(1)(C) does not apply in this instance.

Accordingly, the Court **DENIES** the motion to dismiss pursuant to Sections 1716 (c)(1)(C).

### ii.    Section 1716(c)(1)(F)

Section 1716(c)(1)(F) provides that a judgment will not be recognized if there is "substantial doubt about the integrity of the rendering court with respect to the judgment." One example of substantial doubt as to the integrity of a court is when the "judiciary is swayable if a case has political implications." *Mulugeta v. Ademachew*, 407 F. Supp. 3d 569, 584 (E.D.Va. 2019).

There is no evidence of substantial doubt as to the integrity of the Israeli District Court in this case. Defendant alleges that the speed at which the Israeli District Court determined the

United States District Court
Northern District of California

1    default judgment indicates that there is substantial doubt as to court's integrity.  ECF 20, at 9.  It

2    cites *Mulugeta*, in which the court found that a swift judgment, particularly a judgment with

3    findings contrary to the basic underpinnings of contractual law, indicated that the plaintiff's status

4    influenced the judges.  407 F. Supp. 3d at 585.  While the default judgment in this case was

5    entered the same day Plaintiffs requested it, the case had been pending for five months, and there

6    is no indication that Plaintiffs' status led to this ruling.  Compl. ¶¶ 7, 12-13.  The Israeli District

7    Court's verdict statement for the default judgment provided that it was granted the default

8    judgment due to "the expiration of deadline for filing a statement of defense."  ECF 1, Ex. 2

9    (Verdict).  When the Israeli District Court reviewed Defendant's motion to set aside default

10   judgment, it set forth conditions on which the default judgment would be reversed in Defendant's

11   favor.  ECF 1, Ex. 3 (Decision).  The fact that the court was going to find in Defendant's favor

12   further suggests that the Israeli tribunal was not biased toward Plaintiff.

13        Defendant also alleges that Plaintiffs' counsel represented that "their ties to Israel's Prime

14   Minister would ensure that the Israeli District Court would rule promptly in Plaintiffs' favor."

15   ECF 20, at 10 n.3.  There are, however, no facts in the complaint that suggest that Plaintiffs had an

16   unfair advantage due to any alleged political connections to Israel's Prime Minister.  The case

17   itself is furthermore not political in nature, as it involves a breach of contract involving lab-grown

18   diamonds.

19        Accordingly, the Court **DENIES** the motion to dismiss pursuant to Section 1716(c)(1)(F).

20        **iii.    Section 1716(c)(1)(G)**

21        Finally, Section 1716(c)(1)(G) does not recognize a foreign judgment if the foreign court

22   did not follow due process of law.  Foreign courts, however, are not expected to adopt every

23   aspect of American due process.  *AO Alfa-Bank v. Yakolev*, 21 Cal. App. 5th 189, 215 (Cal. Ct.

24   App. 2018).  Instead, a court must "decide whether the foreign procedures [were] fundamentally

25   fair, and d[id] not offend basic fairness."  *De Fontbrune v. Wofsy*, 409 F. Supp. 3d 823, 846 (N.D.

26   Cal. 2019) (internal citations omitted).

27        Here, the Israeli District Court afforded Defendant due process.  In taking the facts in the

28   complaint as true, Plaintiffs served Defendant "in accordance with the relevant rules and

United States District Court
Northern District of California

requirements of the Israeli District Court for extraterritorial service of process."  Compl. ¶ 11.

Plaintiffs then moved for the Israeli District Court to enter default judgment in favor of plaintiffs

on August 14, 2022 when Defendant did not file a defense or answer.  *Id.* ¶ 12-13.  Although the

default judgment was granted on the same day, Defendant had the opportunity to engage in the

process after it hired Israeli counsel, and the final judgment was granted two years later.  *Id.* ¶ 13,

16, 30.  The Israeli District Court also stayed the case so that the parties could mediate and would

have set aside the default judgment had Defendants complied with their instructions.  *Id.* ¶¶ 21,

30.  Defendants furthermore appealed the case, and the Israeli Appellate Court reviewed it.  *Id.* ¶

35.  While Israel's procedural requirements may be different from that of California, Defendant's

participation in the Israeli proceedings demonstrates that there was no violation of fundamental

fairness.

Defendant also makes no argument as to improper notice, for which courts most frequently

apply Section 1716 (c)(1)(G).  *See Alfa-Bank*, 21 Cal. App. 5th at 203, 234 (holding that a foreign

court's service attempts comported with due process because it provided sufficient notice, but that

if it did not, the judgment would not qualify for recognition).  Defendant instead argues that

Defendant never received notice that its answer could not be written in English.  ECF 20, at 9.

Even in United States courts, however, it is the responsibility of the parties to comply with the

procedures of the court.  *Kobayashi v. McMullin*, 19-cv-06591-SSS, 2024 WL 1481441, at *6

(C.D. Cal. 2024) ("Compliance with the Local Rules is not optional[.]"); *see also* Stevenson &

Fitzgerald, Rutter Group Prac. Guide, Federal Civ. Pro. Before Trial (The Rutter Group 2024), ¶

1:22 (explaining that practitioners must be familiar with the local rules and have a copy of the

court's current rules).  When turning to the Israeli District Court decision, the court says that

Defendant's answer was rejected because it "was prepared not in accordance with the provisions

of the regulations," including the fact that it was written in English and was not supported by an

affidavit.  ECF 1, Ex. 3.  Because Defendant failed to follow Israeli procedural requirements, there

was no violation of due process here.

Accordingly, the Court **DENIES** the motion to dismiss pursuant to Section 1716 (c)(1)(G)

of the Act.

**C.    Whether there is "Good Reason" to Recognize the Judgment that Outweighs the Grounds for Non-Recognition is Moot.**

If a defendant has satisfied its burden of establishing nonrecognition, the court may "nevertheless recognize a foreign-country judgment if the party seeking recognition of the judgment demonstrates good reason to recognize the judgment that outweighs the ground for nonrecognition." Cal. Civ. Code § 1716(c)(2).

Because the Court finds that Defendant did not meet its burden to establish nonrecognition, the Court need not address this section. The Court, therefore, **DENIES** Section 1716(c)(2) as moot.

## V.    CONCLUSION

After careful consideration of the motions, briefs, and oral arguments, the Court **ORDERS** the following:

1.   Defendant's Motion to Dismiss pursuant to Section 1716 (c)(1)(D) of California's Uniform Foreign-Country Money Judgment Recognition Act is **DENIED**.

2.   Defendant's Motion to Dismiss pursuant to Section 1716 (c)(1)(C), Section 1716 (c)(1)(F), and Section 1716 (c)(1)(G) is **DENIED**.

3.   Defendant's Motion to Dismiss pursuant to Section 1716 (c)(2) is **DENIED** as moot.


This Order resolves ECF 20.

**IT IS SO ORDERED**.

Dated: November 14, 2024

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

13