JEFFREY E. TSAI (SBN 226081)
 *jeff.tsai@us.dlapiper.com*
JAMES S. DAVIDSON (SBN 347622)
 *jamie.davidson@us.dlapiper.com*
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500  |  Fax: 415.836.2501

*Attorneys for Defendant/Counterclaimant*
*DIAMOND FOUNDRY INC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO**

| | |
|---|---|
| E.Y. OROT ASSETS LTD., an Israeli company, and OMEGA ECO DIAMONDS LTD., an Israeli company,<br><br>Plaintiffs,<br>v.<br><br>DIAMOND FOUNDRY INC., a Delaware corporation,<br><br>Defendant. | Case No.  3:24-cv-03836-TLT<br><br>**DEFENDANT/COUNTERCLAIMANT DIAMOND FOUNDRY INC.'S OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM**<br><br>Date:        February 25, 2025<br>Time:       2:00 p.m.<br>Courtroom: Courtroom 9<br>Judge:      The Hon. Trina L. Thompson |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................................... 2

III. LEGAL STANDARD ....................................................................................................... 4

IV. ARGUMENT .................................................................................................................... 5

    A. Foundry Has Stated a Viable Breach of Contract Counterclaim .......................... 5

        1. The facts pleaded in Foundry's counterclaim establish that the Israeli District Court lacked personal jurisdiction over Foundry. .............. 5

        2. The absence of personal jurisdiction eliminates any preclusive effect of the Israeli Default Judgment. ................................................................ 9

    B. Leave to Amend Should Be Granted .................................................................. 12

V. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Arias v. Hernandez,
    No. 22-CV-01203-DMS-BGS, 2023 WL 3773933 (S.D. Cal. Apr. 28, 2023) .................... 9, 10

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................................ 4

Bank of Montreal v. Kough,
    612 F.2d 467 (9th Cir. 1980) .............................................................................................. 7

Brinson v. Garland,
    No. 22-CV-09076-JSC, 2023 WL 4409103 (N.D. Cal. July 7, 2023) .................................. 4

Chavez v. United States,
    683 F.3d 1102 (9th Cir. 2012) ............................................................................................. 4

Jackson v. Carey,
    353 F.3d 750 (9th Cir. 2003) ........................................................................................ 4, 12

Kendall v. Overseas Development Corp.,
    700 F.2d 536 (9th Cir. 1983) ....................................................................................... 10, 11

Lopez v. Inter-Con Sec. Sys., Inc.,
    No. 2:22-CV-09080-CAS (EX), 2024 WL 4839792 (C.D. Cal. Nov. 18, 2024) ................... 10

Patterson v. Van Arsdel,
    883 F.3d 826 (9th Cir. 2018) ............................................................................................... 4

In re Rejuvi Laboratory, Inc.,
    26 F.4th 1129 (9th Cir. 2022) ......................................................................................... 5, 6

In re Rejuvi Laboratory, Inc.,
    No. 20-CV-05541-MMC, 2021 WL 807613 (N.D. Cal. Mar. 3, 2021), rev'd and remanded,
    26 F.4th 1129 (9th Cir. 2022) ............................................................................................. 6

Rossisa Participacoes S.A. v. Reynolds & Reynolds Co.,
    No. 3:18-CV-00297, 2019 WL 4242937 (S.D. Ohio Sept. 6, 2019) ................................ 9, 10

Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica,
    614 F.2d 1247 (9th Cir. 1980) ............................................................................................. 9

Vernici Caldart, S.R.L. v. Prolink Materials, LLC,
    No. 23-CV-01629-AJB-AHG, 2024 WL 4896589 (S.D. Cal. Nov. 26, 2024) ..................... 11

Zucco Partners, LLC v. Digimarc Corp.,
   552 F.3d 981 (9th Cir. 2009) ............................................................................................. 4

**Statutes**

Cal. Civ. Proc. Code §§ 1716-17 ............................................................................................. 10

Cal. Civ. Proc. Code § 1717(a)(2) ............................................................................................. 6

Cal. Civ. Proc. Code § 1717(b)(2) ............................................................................................. 6

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(6) ................................................................................. 4

Defendant Diamond Foundry Inc. ("Defendant" or "Foundry") files this opposition to the motion to dismiss Foundry's counterclaim (ECF No. 51; the "Motion") filed by Plaintiffs E.Y. Orot Assets Ltd. and Omega Eco Diamonds Ltd.

## I.     INTRODUCTION

In their Motion, Plaintiffs assert only one argument for dismissal of Foundry's counterclaim: the affirmative defense of res judicata. Plaintiffs bear the burden of demonstrating – on the pleadings – that Foundry's counterclaim is barred by res judicata. If the res judicata affirmative defense is not clearly evident on the face of the pleadings, or there is any disputed issue of fact, Foundry's counterclaim cannot be dismissed. Here, Foundry's counterclaim factually demonstrates that the Israeli court never had personal jurisdiction over Foundry. Thus, under California law, the Israeli default judgment has no res judicata effect. At the very least, the facts establishing the Israeli court's personal jurisdiction over Foundry are clearly in dispute. Therefore, the Court should deny Plaintiffs' Motion.

Foundry is a California company, and the diamond material manufactured pursuant to the parties' agreement was manufactured in the United States. Under the Israeli law on which Plaintiffs asserted the Israeli court's jurisdiction over Foundry, a foreign defendant must breach the contract, commit a tortious act or omission, or cause damage to the plaintiff ***in Israel***. Breach of contract, tortious activity, or damage caused outside of Israel does not provide grounds for personal jurisdiction. The damage Plaintiffs alleged – the manufacturing of diamond material of type and quality allegedly lower than what was required by the Agreement – could not have occurred in Israel because – as factually alleged – Foundry manufactured the diamond material in the United States. Therefore, as a matter of Israeli law, the Israeli court never had personal jurisdiction over Foundry. Further, in the Israeli court proceedings, Foundry's counterclaim factually alleges that it reserved, maintained, and never waived its argument that the Israeli court lacked personal jurisdiction over Foundry.

The issue of the Israeli court's lack of personal jurisdiction over Foundry is one that is squarely within this Court's authority to determine in this litigation. Because the facts, as pleaded in Foundry's counterclaim, amply show that the Israeli court lacked personal jurisdiction over

Foundry, California law does not afford res judicata effect of the Israeli default judgment. And because res judicata does not apply here, Foundry's counterclaim for breach of contract is viable as a matter of law – thereby eliminating any validity to the sole basis for Plaintiffs' motion.

## II.     FACTUAL BACKGROUND

Foundry and Orot entered into an agreement entitled "Foundry-As-A-Service Agreement" (the "Agreement") [ECF No. 38] on October 14, 2020, in which Orot agreed to pay Foundry a supply capacity fee of $2,500,000 and agreed to purchase from Foundry 1,250 carats of laboratory-manufactured diamond material every month for five years. Am. Counterclaim ¶ 7. Under the Agreement, Foundry is not responsible for the processing of the diamond material it sells to Orot. Id. at ¶ 10. Additionally, Foundry is not responsible for the marketing and sale of the processed diamonds. Id. Those responsibilities squarely belong with Orot. Id.

In reliance on Orot's commitment, Foundry reserved manufacturing capacity for Orot that could have been reserved for other customers. Id. at ¶ 9. The parties began performing on the Agreement in October 2020, when Plaintiffs made the first contractually mandated monthly purchase of diamond material from Foundry, and Foundry shipped the diamond material to Plaintiffs. Id. at ¶ 11. At all times, the diamond material provided by Foundry to Plaintiffs met the standards specified in the Agreement, including what was agreed to regarding size, clarity, and color distribution. Id. at ¶ 17. However, Plaintiffs did not properly process the diamond material. Id. at ¶ 12. Against the advisement of Foundry, Plaintiffs applied high-pressure post-processing to the diamond material, which can negatively affect the tint of diamonds. Id.

Unhappy with the results of Plaintiffs' ill-advised processing methods, Orot sent Foundry a letter on June 30, 2021, purporting to terminate the Agreement and alleging "faultiness of the Diamonds." Id. at ¶ 14. Foundry responded to Orot on July 8, 2021, stating that "should [Orot] not accept [Foundry's] next shipment, [Orot] will be in default of the contract, and Diamond Foundry shall have no further obligation to ship while retaining prior cash paid as per the contract." Id. at ¶ 15. Despite Orot's full knowledge that it was breaching the Agreement, Orot refused to purchase the contractually mandated monthly offtake of diamond material for June 2021 or any month since. Id. at ¶ 16. Orot's breach of the Agreement

cost Foundry at least $7,619,750 in revenue. Id. at ¶ 18.

Despite the Agreement's requirement that the parties mediate prior to litigation, Plaintiffs initiated proceedings against Foundry in the District Court of Tel Aviv of the State of Israel ("Israeli District Court") in or around March 2022, purporting to bring claims related to the Agreement (the "Israeli Complaint"). Id. at ¶¶ 20-21. Plaintiffs initiated litigation in Israel even though Foundry is a California company with no ties to Israel and the diamond material manufactured pursuant to the Agreement was manufactured in the United States. Id. at ¶ 23. Additionally, Foundry never availed itself of Israel or anticipated litigation in Israel – indeed, the parties chose the laws of the state of California (not Israel) as the governing law for the Agreement, and the parties chose the mediation procedures of the U.S.-based CPR Institute for Conflict Prevention & Resolution to govern the pre-litigation mediation required under the Agreement. Id. at ¶¶ 24-26. Nevertheless, Plaintiffs asserted that Articles 166(4), (4a), and (5) of the 2018 Israeli Civil Procedure Regulations provided sufficient grounds for the Israeli District Court to have personal jurisdiction over Foundry and for Plaintiffs to serve the Israeli Complaint on Foundry in California. Id. at ¶ 22.

Despite Foundry's timely submitted statement of defense to the Israeli Complaint, asserting, among other grounds, that Foundry has no business and no representation in Israel, Plaintiffs sought and secured a same-day default judgment against Foundry on August 14, 2022 (the "Israeli Default Judgment"). Id. at ¶ 27. In Foundry's filings with the Israeli District Court to vacate the Israeli Default Judgment, Foundry contended that it had a strong argument that the Israeli District Court lacked personal jurisdiction over Foundry. Id. at ¶ 28. Foundry's counsel appeared under limited power of attorney for the purposes of vacating the Israeli Default Judgment and challenging the Israeli District Court's personal jurisdiction over Foundry. Id. The Israeli District Court refused to vacate the Israeli Default Judgment unless Foundry deposited NIS 3,000,000 (approximately US $810,000 at then-current exchange rates) with the Israeli District Court and paid court fees to Plaintiffs. Id. at ¶ 29. Foundry declined to deposit $810,000 with the Israeli District Court because the Israeli District Court had no personal jurisdiction over Foundry. Id. at ¶ 30.

On June 26, 2024, Plaintiffs filed the complaint seeking domestication of the Israeli Default Judgement pursuant to the California Uniform Foreign-Country Money Judgments Recognition Act ("Recognition Act"). ECF No. 1. On August 29, 2024, Foundry filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). ECF No. 20. On November 14, 2024, the Court denied Foundry's motion to dismiss. ECF No. 42. On November 29, 2024, Foundry filed its answer and affirmative defenses to the complaint and counterclaim for breach of contract. ECF No. 47. Foundry filed its first amended counterclaim for breach of contract on January 9, 2025. ECF No. 55.

### III.  LEGAL STANDARD

In ruling on a motion to dismiss, a court must "accept the [counterclaimant's] allegations as true and construe them in the light most favorable to [counterclaimant][.]" Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009); see also Patterson v. Van Arsdel, 883 F.3d 826, 829 (9th Cir. 2018) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."). The motion should be denied if the counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quotation marks omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 1108-9 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Dismissal without leave to amend "is improper unless it is clear that the [counterclaim] could not be saved by any amendment." Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003). "When ruling on a Rule 12(b)(6) motion, district courts may consider documents attached to the complaint, documents incorporated by reference into the complaint, and matters of judicial notice without converting a motion to dismiss into one for summary judgment." Brinson v. Garland, No. 22-CV-09076-JSC, 2023 WL 4409103, at *4 (N.D. Cal. July 7, 2023).

////

////

IV.  **ARGUMENT**

A.  **Foundry Has Stated a Viable Breach of Contract Counterclaim**

Dismissal is not warranted because Plaintiffs' sole justification is that Foundry's counterclaim is "precluded by" a doctrine – specifically, res judicata – that has no legal effect on Foundry's counterclaim. Although Plaintiffs contend that res judicata allegedly applies here because the parties' contractual dispute was supposedly "resolved" by the Israeli Default Judgment (Mot. at 1), the Israeli Default Judgment cannot as a matter of law preclude Foundry's counterclaim because the Israeli District Court never had personal jurisdiction over Foundry. The lack of personal jurisdiction, which is supported by counterclaim factual allegations, prevents res judicata application of the Israeli Default Judgment to the counterclaim.

1.  **The facts pleaded in Foundry's counterclaim establish that the Israeli District Court lacked personal jurisdiction over Foundry.**

The facts pleaded in Foundry's counterclaim establish that the Israeli District Court never had personal jurisdiction over Foundry.

First, the counterclaim factually pleads that Foundry continuously asserted its right to contest the Israeli District Court's personal jurisdiction during the Israeli litigation – and never waived this right. See Am. Counterclaim ¶ 28. Plaintiffs cite In re Rejuvi Laboratory, Inc., 26 F.4th 1129, 1134 (9th Cir. 2022), to factually argue that Foundry somehow "waived its right to argue the Israeli District Court lacked personal jurisdiction by voluntarily appearing to argue that default was improperly entered and never having argued, or even reserved its right to argue, that it disputed the Israeli court's jurisdiction over it." Mot. 7-8. As a matter of fact pleading, Foundry made no such waiver in the Israeli litigation. See Am. Counterclaim ¶ 28. In fact, Foundry's filings with the Israeli District Court to vacate the Israeli Default Judgment contended that it had a strong argument that the Israeli District Court lacked personal jurisdiction over Foundry. Id. Additionally, Foundry's counsel appeared under limited power of attorney solely for the purpose of vacating the Israeli Default Judgment and challenging the Israeli District Court's personal jurisdiction over Foundry. Id. Therefore, as factually pleaded in the counterclaim, Foundry reserved, maintained, and never waived its argument that the Israeli

District Court lacked personal jurisdiction.

Moreover, in any event, the Rejuvi decision is inapposite because that court was interpreting a provision that has no bearing on this matter. The Rejuvi court examined California Code of Civil Procedure Section 1717(b)(2), which states that "[a] foreign-country judgment shall not be refused recognition for lack of personal jurisdiction ***under paragraph (1) of subdivision (a)*** if . . . [t]he defendant voluntarily appeared in the proceeding, other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant." (Emphasis added.) The Rejuvi court's reference to "paragraph (1) of subdivision (a)" is key here because that provision – Section 1717(a)(1) – refers to an altogether different scenario where "a foreign court lacks personal jurisdiction over a defendant if . . . [t]he foreign court lacks a basis for exercising personal jurisdiction that would be sufficient according to the standards governing personal jurisdiction in this state." In other words, Section 1717(b)(2) specifies only that Section 1717(a)(1) personal-jurisdiction recognition refusal (i.e., using personal-jurisdiction standards under California law) is not a basis to refuse recognition if the defendant voluntarily appeared in the proceeding other than for the purpose of protecting property seized or threatened with seizure in the proceeding or of contesting the jurisdiction of the court over the defendant.[1]

Importantly, Section 1717 makes specifically clear that waiver based on a defendant's voluntary appearance ***does not apply*** to the argument that a "foreign court lacks personal jurisdiction ***under its own law***." Cal. Civ. Proc. Code § 1717(a)(2) (emphasis added). Because, unlike in Rejuvi, Foundry is alleging in its counterclaim that the Israeli District Court lacked personal jurisdiction over Foundry as a matter of Israeli law, the Rejuvi decision and Section 1717(b)(2) have no bearing on the instant matter and Foundry has not waived its argument that

---

[1] Indeed, unlike in the Israeli litigation here, the Rejuvi defendant "relie[d] solely on" Section 1717(a)(1), arguing that the foreign court lacked personal jurisdiction over the defendant based on an application of California personal jurisdiction law. In re Rejuvi Laboratory, Inc., No. 20-CV-05541-MMC, 2021 WL 807613, at *3 (N.D. Cal. Mar. 3, 2021), rev'd and remanded, 26 F.4th 1129 (9th Cir. 2022).

the Israeli District Court lacked personal jurisdiction over it.[2]

Second, the counterclaim factually pleads that Israeli law does not confer upon the Israeli District Court personal jurisdiction over Foundry. Plaintiffs base their claim for the Israeli District Court's personal jurisdiction over Foundry on Articles 166(4), (4a), and (5) of the 2018 Israeli Civil Procedure Regulations. See Am. Counterclaim ¶ 22. Articles 166(4), (4a), and (5) state that a party may properly serve a foreign defendant if:

> (4) The lawsuit is related to a contract, and one of the following conditions occurs:
>   (a) The contract, in whole or in part, was made or breached within the bounds of Israel or the possibility of its performance in Israel is precluded;
>   (b) The laws of the State of Israel apply to the contract;
>
> (4a) The lawsuit is based on an act or omission that occurred within Israel;
>
> (5) The lawsuit is based on damage caused to the plaintiff in Israel due to a product, service or the conduct of the defendant, provided that the defendant could have foreseen that the damage would be caused in Israel and that the defendant, or a person related to it, engages in international trade or provision of international services on a significant scale[.]

Davidson Declaration in Support of Foundry's Request for Judicial Notice in Support of Opposition to Motion ("RJN") Ex. B.

Here, the facts as pleaded in the counterclaim invalidate the grounds for personal jurisdiction outlined in Articles 166(4), (4a), and (5):

- Article 166(4)(a) and Article 166(4a) cannot apply to confer personal jurisdiction

---

[2] Plaintiffs' other cited case, Bank of Montreal v. Kough, 612 F.2d 467 (9th Cir. 1980), is also inapposite. The Bank of Montreal court addressed a now-outdated version of the Recognition Act and focused on whether "American due process standards were [] offended by the Canadian court's assertion of personal jurisdiction over [defendant]." Id. at 470. Here, for res judicata purposes, the key question is not about American due process standards – instead, it's whether the counterclaim sufficiently pleads facts that show that the Israeli District Court lacked personal jurisdiction as a matter of Israeli law. The counterclaim clearly pleads such facts.

because, as factually alleged, the Agreement has no relationship to Israel. As an initial matter, it is alleged that the Agreement was made outside of Israel. See Am. Counterclaim ¶ 8. Moreover, the counterclaim alleges that Foundry is a California company with no ties to Israel and the diamond material manufactured pursuant to the Agreement was manufactured in the United States. See id. ¶ 23. Under the Agreement, Orot agreed to purchase from Foundry 1,250 carats of laboratory-manufactured diamond material every month for five years. See id. at ¶ 7. Foundry's obligations under the Agreement are limited to manufacturing and selling the diamond material each month to Orot. See id. at ¶¶ 7, 9, 10. And the alleged breach (including all acts and omissions) occurred outside the bounds of Israel, because Foundry manufactured the diamond material in the United States. See id. ¶ 23.[3]

- Article 166(4)(b) does not apply to confer personal jurisdiction because the counterclaim pleads facts establishing that Foundry and Orot chose the laws of the state of California – not Israel – as the governing law for the Agreement. See id. ¶ 25.

- Article 166(5) cannot give the Israeli District Court personal jurisdiction because there was no damage "caused in Israel" and, in any event, Foundry could not "foresee[] that [any alleged] damage would be caused in Israel." See RJN Ex. B. Indeed, the damage Plaintiffs alleged – the manufacturing of diamond material of "type and quality" allegedly lower than what was "required by" the Agreement (Mot. at 2) – could not have occurred in Israel because, as the counterclaim alleges, Foundry manufactured the supposedly defective diamond material in the United

---

[3] Under Israeli law, the manufacturing of goods outside of Israel for sale in Israel "cannot be deemed to be acts or omissions committed in Israel" for jurisdictional purposes. See RJN Ex. E at 3 (CA 8195/02 Sheetrit v. Sharp Corporation, PD 58(1) 193 (2003) (Isr.) (affirming dismissal of action where applicant had improperly sought to invoke the Israeli court's jurisdiction over a foreign manufacturer that manufactured television sets outside of Israel for sale in Israel)).

States. See id. at ¶ 23.[4]

Given that Foundry's counterclaim factually establishes that the Israeli District Court lacked personal jurisdiction over Foundry as a matter of Israeli law, and Foundry never waived that argument, the Court should not dismiss Foundry's counterclaim on res judicata grounds.

**2.     The absence of personal jurisdiction eliminates any preclusive effect of the Israeli Default Judgment.**

Because the alleged facts in Foundry's counterclaim demonstrate that the Israeli District Court lacked authority to exercise personal jurisdiction over Foundry, there is no legal basis under California law by which the Court can give res judicata effect to the Israeli Default Judgment.

The starting place for the analysis is the fundamental rule in California that res judicata does not apply to a judgment if the issuing court lacks personal jurisdiction over the parties. See, e.g., Arias v. Hernandez, No. 22-CV-01203-DMS-BGS, 2023 WL 3773933, at *4 (S.D. Cal. Apr. 28, 2023) ("As noted, res judicata does not apply if the state court lacked jurisdiction to hear the action. A court lacks jurisdiction if it lacks personal jurisdiction over the parties or subject matter jurisdiction over the dispute, or if interested parties were not given notice and an

---

[4] Any other damage that Plaintiffs may try to allege beyond the manufacturing of supposedly defective diamond material is strictly barred by the Agreement. Under the Agreement, Foundry cannot held be liable for consequential, incidental or any other non-direct damages:

> Notwithstanding anything to the contrary or otherwise and to the maximum extent permitted under applicable law, in no event will DFOUNDRY be liable under this Agreement for any consequential, incidental, indirect, exemplary, special or punitive damages. The foregoing limitation applies notwithstanding the failure of any agreed or other remedy of its essential purpose.
>
> Except as set forth in Section 4 Indemnity and Section 5 Confidentiality, in no event will either party be liable under this agreement for any consequential, incidental, indirect, exemplary, special or punitive damages however caused and under any theory of liability (whether in contract, tort including negligence, indemnity or otherwise[)] and whether the party has been advised of the possibility of such damage. The foregoing limitation applies notwithstanding the failure of any agreed or other remedy of its essential purpose.
>
> In no event will either party or its licensors or suppliers have any liability to the other party for any lost profits, loss of use, except in cases of wilful misconduct by the liable party.

Agreement [ECF No. 38] at 4 (text decapitalized).

opportunity to be heard."); see also Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1255 (9th Cir. 1980) ("It is well-established that a judgment entered without personal jurisdiction over the parties is void."). Indeed, when confronted with a foreign judgment where the foreign court lacked personal jurisdiction over the parties, courts routinely decline the application of res judicata. See, e.g., Rossisa Participacoes S.A. v. Reynolds & Reynolds Co., No. 3:18-CV-00297, 2019 WL 4242937, at *12-13 (S.D. Ohio Sept. 6, 2019) (determining that "the doctrine of *res judicata* does not apply to bind Reynolds to the Brazilian court's 'Decision'" because "Reynolds was not subject to jurisdiction in Brazil").

In this case, as discussed, Foundry's counterclaim asserts facts establishing that the Israeli District Court lacked personal jurisdiction over Foundry. See Am. Counterclaim ¶¶ 23-24. And if the alleged counterclaim facts ultimately demonstrate that the Israeli District Court lacked personal jurisdiction over Foundry, the Israeli Default Judgment can have no res judicata effect on this case. See supra Arias, 2023 WL 3773933, at *4; Rossisa Participacoes S.A., 2019 WL 4242937, at *12-13.

To be sure, the question of the Israeli District Court's personal-jurisdiction power over Foundry is one that is within this Court's legal authority to determine. See Cal. Civ. Proc. Code §§ 1716-17 (stating that a court must determine whether the foreign court had "personal jurisdiction over the defendant," including whether the foreign court had "personal jurisdiction under its own law," before enforcing the foreign judgment). Plaintiffs cite Kendall v. Overseas Development Corp., 700 F.2d 536, 538 (9th Cir. 1983), to argue that the Court is somehow prohibited from making such a determination about the Israeli District Court's personal jurisdiction over Foundry because "personal jurisdiction is subject to res judicata just the same as any other issue." Mot. at 7. Kendall is inapposite on multiple grounds.

First, Kendall does not involve a foreign judgment. When presented with a foreign judgment, courts *must assess* whether the foreign court had personal jurisdiction over the defendant before enforcing a judgment against the defendant (see Cal. Civ. Proc. Code §§ 1716-17) or giving a judgment preclusive effect (see Rossisa Participacoes S.A., 2019 WL 4242937,

at *12-13). The foreign court's own determination of its jurisdiction in no way precludes a court in the United States from making an independent decision about the foreign court's jurisdiction. See, e.g., Lopez v. Inter-Con Sec. Sys., Inc., No. 2:22-CV-09080-CAS (EX), 2024 WL 4839792, at *9 (C.D. Cal. Nov. 18, 2024) (finding "that a question of fact remains" as to whether "personal jurisdiction was insufficient pursuant to Honduran law" as it relates to a judgment entered against defendant in Honduras); Vernici Caldart, S.R.L. v. Prolink Materials, LLC, No. 23-CV-01629-AJB-AHG, 2024 WL 4896589, at *3 (S.D. Cal. Nov. 26, 2024) (stating that "the Court has concerns about whether the Court of Monza had personal jurisdiction over Defendant under both Italian law and California law" as it relates to a judgment entered by the Court of Monza against defendant).

Second, the facts in the instant matter are actually the inverse of the facts in Kendall. In Kendall, the court addressed "whether the prior state court determination of lack of *in personam* jurisdiction over [defendant] precludes relitigation of that issue in the subsequent federal litigation on the same cause of action." Kendall, 700 F.2d at 538. The Kendall plaintiff conceded that it had the opportunity to "actually litigate[]" the issue of whether the defendant was subject to the Idaho long-arm statute, and the state court made a "final" determination that the defendant was not subject to the Idaho long-arm statute. *Id*. The facts are reversed here.

In this case, rather than declining personal jurisdiction, the Israeli District Court issued the Israeli Default Judgment against Foundry despite having no valid basis under Israeli law for personal jurisdiction over Foundry. See Am. Counterclaim ¶¶ 23-24, 27. And rather than permitting Foundry to "actually litigate" (as per Kendall) the issue of personal jurisdiction, Foundry's counterclaim factually alleges that the Israeli District Court first required Foundry to make an exorbitant deposit of $810,000 with the court (as a condition for the Israeli District Court to set aside the Israeli Default Judgment) before hearing Foundry's argument that the Israeli District Court lacked personal jurisdiction over Foundry. See id. at ¶ 29. Thus, Foundry has never been afforded a fair opportunity to "actually litigate" the issue of the Israeli District Court's personal jurisdiction over it.

Because personal jurisdiction has not been litigated, the facts pleaded in the counterclaim

11
DEFENDANT/COUNTERCLAIMANT DIAMOND FOUNDRY INC.'S OPPOSITION TO
MOTION TO DISMISS COUNTERCLAIM
CASE NO. 3:24-CV-03836-TLT

are sufficient to establish the lack of the Israeli District Court's personal jurisdiction over Foundry – which means, as a result, the res judicata doctrine has no preclusive effect as a matter of law over the counterclaim.

### B. Leave to Amend Should Be Granted

Finally, the Court should grant leave to amend to the extent it finds any deficiencies in Foundry's counterclaim. Dismissal without leave to amend "is improper unless it is clear that the [counterclaim] could not be saved by any amendment." Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003). Foundry should be afforded the opportunity to allege further facts, if necessary, to demonstrate that Foundry has a viable counterclaim for breach of contract.

### V. CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion. If the Court is inclined to dismiss, leave should be granted to amend Foundry's counterclaim to cure any deficiencies the Court may find.

Dated: January 10, 2025

Respectfully submitted,

DLA PIPER LLP (US)

By: /s/ Jeffrey E. Tsai
JEFFREY E. TSAI
JAMES S. DAVIDSON

*Attorneys for Defendant/Counterclaimant DIAMOND FOUNDRY INC.*